**Richard HOUSE, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 336–87C.**

United States Claims Court.

Dec. 9, 1987.

Gary Howard Simpson, Bethesda, Md., for plaintiffs.

Stephen J. McHale, with whom were Asst. Atty. Gen., Richard K. Willard, David M. Cohen, and Robert A. Reutershan, Washington, D.C., for defendant. Michael Davidson and Ken U. Benjamin, Senate Legal Counsel, U.S. Senate, of counsel.

## OPINION

BRUGGINK, Judge.

This action is brought by six former employees of the Service Department of the United States Senate. They seek compensatory damages and reinstatement in connection with their discharges based on breach of contract and violation of the due process clause of the United States Constitution. Defendant has moved to dismiss the complaint on three grounds: (1) the court lacks jurisdiction because the claim is not founded upon a contract or any money-mandating provision of the Constitution, a statute, or an executive regulation; (2) the complaint fails to state a claim for deprivation of a constitutionally protected right or privilege or for violation of an employment contract; and (3) the claim is barred by the Speech and Debate Clause, U.S.Const. art. I, § 6, cl. 1. In support of its motion, defendant has submitted the declaration of Russell Jackson, Director of the Service Department, as well as a number of documents.

The motion is predicated on Rules 12(b)(1) (lack of jurisdiction) and 12(b)(4) (failure to state a claim) of the Rules of the United States Claims Court ("RUSCC"). For the reasons set out in *Metzger, Shadyac & Schwartz v. United States,* 10 Cl.Ct. 107 (1986), the court is persuaded that, to the extent plaintiffs have alleged the existence of a contract, the court has jurisdiction to review the claim. It further concludes, however, that taking as true the allegations in the complaint upon which plaintiffs predicate the existence of a contract, and construing them most favorably to plaintiffs, the complaint fails to state a claim upon which relief can be granted. It is therefore unnecessary to consider the additional matters submitted by defendant outside the pleadings,[1] or to address the question of whether the action is otherwise barred by the speech and debate clause.

### I. *Plaintiffs' Contentions*

The following facts are drawn from the complaint and are assumed to be correct.

The Service Department provides the United States Senate with duplication, equipment, publication, mailing, and other support services. It is under the direction of the Sergeant at Arms and Doorkeeper of the United States Senate.

Plaintiff Judith Wilbert was, at the time of her discharge, Manager of the Reprographics Division (41 employees). Richard House was Operations Branch Head. He managed 50 production employees involved in graphic arts communication for the Senate. Reed James was an Assistant Comptroller whose duties included preparation of and justification for the Service Department's $10,000,000.00 budget. Leonard Lynch held a position as Planning Analyst. His responsibilities included economic justification for equipment purchases, application of printing technology to Senate areas, and evaluation of contractor proposals. Alan Valsi was Head of the Management Support Branch. He had responsibility and control of the Customer Service Section, Records Administration, and Planning and Quality Control Sections of the Service Department. Theresa Ricco held a position as Bindery Machine Operator, Level I. Her job responsibilities included binding, sealing, insertion, and mailing of press releases, newspaper columns, and other publications. Plaintiffs allege they held positions that did not involve any discretionary or meaningful input into the legislative process.

The plaintiffs were discharged on or about February 12, 1986, without previous notice or counseling. They all met or exceeded job performance and conduct requirements. All except Lynch assert that they were replaced upon discharge. The plaintiffs served under an employee handbook and a policy and procedure manual.

The complaint alleges that the handbook and policy manual create express or implied contracts of employment with the Service Department which precluded plaintiffs' discharge so long as they met established standards of conduct and performance,

---

1. The motion under RUSCC 12(b)(4) is thus not to be treated as one for summary judgment. Virtually all the material submitted by defendant relates to the alleged bar under the speech and debate clause which, as explained elsewhere, need not be addressed.

and, if they were subject to a reduction in force, to have their performance appraisals used in that action. Count I asserts that their discharges constituted a deprivation of property and liberty rights without due process. Count II asserts a breach of an alleged express or implied contract of employment. Plaintiffs contend that this court has jurisdiction over the controversy by virtue of the Tucker Act, 28 U.S.C. § 1491 (a)(1) (1982).

## II. *Discussion*

■ Under the Tucker Act, this court may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S. C. § 1491(a)(1) (1982). As plaintiffs recognize, however, this statute is jurisdictional only and does not in and of itself create any substantive rights enforceable against the Government for money damages. *United States v. Testan*, 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976); *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). For plaintiffs' claim to be cognizable in this court, it must be based on a contract or on a constitutional, statutory, or regulatory provision that can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained. *United States v. Mitchell*, 463 U.S. 206, 217, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983); *Testan*, 424 U.S. at 400, 96 S.Ct. at 954; *Eastport S.S. Corp.*, 178 Ct.Cl. at 607, 372 F.2d at 1009. With respect to the sources of this substantive right to compensation, plaintiffs' brief states, "Their claims are under a contract and under the Constitution; they are not under a statute or regulation." The court will examine these two claims in turn.

### a. The Contract Claim

It is well recognized that there is a significant distinction between those govern-

ment employees who hold their positions by contract and those who are appointed. This was clearly articulated in *United States v. Hopkins*, 427 U.S. 123, 128, 96 S.Ct. 2508, 2511–12, 49 L.Ed.2d 361 (1976). In that case the plaintiff claimed that her deceased husband had been wrongfully discharged by the Army and Air Force Exchange (AAFE). The Court of Claims rejected a motion to dismiss for lack of jurisdiction, finding that the decedent's relationship with the AAFE was based on an implied contract. The Supreme Court reversed. Its ultimate holding was that it was erroneous for the Court of Claims to assume that AAFE employees could never serve by appointment, and it remanded for a redetermination of whether there was an implied-in-fact employment contract. In reaching that result, however, the Court reviewed some legal principles that apply here. The Court pointed out that the only means by which appointed employees subject to unjustified personnel actions are given a cause of action against the Government is through the Back Pay Act, 5 U.S.C. § 5596 (1982).[2] The Court goes on to state, "The Act is made necessary by the fact that, absent specific command of statute or authorized regulation, an appointed employee subjected to an unwarranted personnel action does not have a cause of action against the United States." 427 U.S. at 128, 96 S.Ct. at 2511. Recognizing the difficulty created by *Hopkins*, plaintiffs assert that they indeed were contract employees and not appointees.

Plaintiffs' contention is directly contrary to applicable law and is not within the permissible inferences from the allegations in the complaint. The court notes initially that plaintiffs point to no written contract, statutory provision, or regulation giving them an express right to continued employment. While 2 U.S.C. § 61f-7 (1982) authorizes the Sergeant at Arms to "establish such number of positions as he deems appropriate and appoint and fix the compen-

---

**2.** Plaintiffs have not asserted that they are entitled to relief under the Back Pay Act, and in any event are not within its limited coverage. Nor do plaintiffs claim to be entitled to the proce-

dural remedies afforded competitive service or preference eligible appointees by the Civil Service Reform Act.

sation of employees to fill the positions so established," that section undercuts plaintiffs' position. On its face, it merely gives the Sergeant at Arms authority to "appoint" employees, not contract with them. As defendant points out, other code provisions specifically authorize the Sergeant at Arms to enter into contracts for temporary employment, 2 U.S.C. § 61f–8, or for computer services, 2 U.S.C. § 123c–1, confirming that the use of the term "appoint" in § 61f–7 was not unintentional.

■ Moreover, it is well established that barring some explicit agreement to the contrary entered into by a federal officer having authority to contract, federal personnel do not have contractual relationships with the Government. *Kizas v. Webster,* 707 F.2d 524, 538 (D.C.Cir.1983) (that federal personnel do not have contractual relationships with the Government is a "verity"), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984); *Kania v. United States,* 227 Ct.Cl. 458, 464–65, 650 F.2d 264, 268 (1981) ("[T]he rights of civilian and military public employees against the government do not turn on contract doctrines."); *Shaw v. United States,* 226 Ct.Cl. 240, 251, 640 F.2d 1254, 1260 (1981) ("Plaintiff may not base his theory of recovery on contract law since he was a federal employee."); *Crisan v. United States,* 223 Ct.Cl. 682, 683, 650 F.2d 286 (1980) (a non-veteran excepted service employee had "no property interest in his position and ... the Navy had the power to summarily discharge him without a hearing"); *Benton v. United States,* 6 Cl.Ct. 781, 788 (1984).

■ With respect to the type of employment involved here, there plainly has to be a legal presumption that plaintiffs were appointed. *See Chu v. United States,* 773 F.2d 1226, 1229 (Fed.Cir.1985) ("[A]bsent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.").

In an effort to overcome this presumption, plaintiffs point only to their employee handbook and policy manual. In their complaint, plaintiffs rely on the following portion of the Service Department's Employee Handbook:

> To ensure that all Sergeant at Arms employees are working in a safe and productive environment and that all departments are operating efficiently, the Sergeant at Arms has established general standards.
>
> These standards encompass both job performance and personal conduct. Standards of job performance are determined by the employee's position. Standards of personal conduct, however, are uniform throughout the jurisdiction of the Sergeant at Arms.
>
> When an employee is not meeting the general standards, it is the intent of the Sergeant at Arms to provide the employee with ample warning, adequate information, and sufficient time in which to correct his/her misconduct or job performance problems.
>
> ... In most cases, when an employee's conduct or performance is unacceptable, the disciplinary process will be progressive: beginning with informal discussions; followed by formal meetings, probation, and termination. However, should the circumstances warrant immediate termination of an employee, such action may occur.

In addition, plaintiffs cite in their complaint the Service Department's Policies and Procedures Manual for the proposition that performance appraisal ratings must be used in consideration of terminations or reductions in force.

Plaintiffs' argument is that the handbook and the manual create implied promises that they would be discharged only for cause and that they would not be the subject of a reduction in force[3] unless their performance ratings were considered, and that these promises are part of an enforceable contract. This is precisely the argu-

---

**3.** Defendant has not agreed that a reduction in force took place. It is not necessary, however, for the court to resolve that issue.

ment that the Supreme Court rejected, however, in *Army and Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982). There the plaintiff was an appointed employee of the Army and Air Force Exchange Service. He contended that governing regulations permitted only limited separations for cause and guaranteed certain appeal rights. In reversing the district court dismissal, the U.S. Court of Appeals for the Fifth Circuit ruled that the regulations constituted an implied-in-fact contract of employment, which could be enforced through the Tucker Act. The Supreme Court unanimously reversed. It specifically rejected the argument that the effect of *Testan* could be avoided by reliance on an appointee's internal procedural rights:

> To accept this reasoning would be to undermine the Court's ruling in *Testan* that the Tucker Act provides a remedy only where damages claims against the United States have been authorized explicitly.... [I]f employment statutes and regulations create an implied-in-fact contract, surely the Court would have so noted in *Testan* instead of directing that the complaint be dismissed.

456 U.S. at 739–40, 102 S.Ct. at 2124–25. The Court further stated:

> The Court's observation in *Testan* that the case was "not one concerning a wrongful discharge or a wrongful suspension," 424 U.S., at 402, [96 S.Ct. at 955], does not indicate, as respondent urges, that any termination or suspension suit may be brought under the Tucker Act. In *Hopkins,* the Court relied on *Testan* in disposing, summarily and adversely, of the contention that "plaintiff's discharge in violation of executive regulations constituted a claim enforce-

able under the Tucker Act." 427 U.S. at 130 [96 S.Ct. at 2512].

456 U.S. at 740 n. 12, 102 S.Ct. at 2125.

Plaintiffs have supplied the court with no factual or legal basis to distinguish *Sheehan.* Clearly the relevant provisions of the employee handbook and the policies and procedures manual do not purport to change their status as appointees. The most that could be drawn from a generous reading of the handbook and manual provisions is that plaintiffs are appointees of the legislative branch with certain procedural rights.[4] That fact alone, however, does not create a contract. Although plaintiffs may have a claim elsewhere for enforcement of procedural rights, they have not stated a claim for relief that can be heard by this court.

b. The Constitutional Claim

■ The fact that there is no contract, statute, or regulation that plaintiffs can rely on to give them a right to relief should be conclusive. Their complaint, however, also contains a claim for relief under the due process clause of the fifth amendment of the Constitution. The precise basis of the plaintiffs' argument is not clearly articulated. To the extent it is a generalized assertion of procedural rights under the due process clause, however, it is not reviewable here. We have no jurisdiction founded solely upon that provision. *Alabama Hosp. Ass'n v. United States,* 228 Ct.Cl. 176, 180, 656 F.2d 606, 609 (1981), *cert. denied,* 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982).

■ Apparently plaintiffs' argument is that they have constitutionally cognizable property interests in their positions that are enforceable through an action for breach of contract. Plaintiffs' constitutional analysis is clearly predicated on the assumption that they have contractual rights

---

**4.** As defendant points out, the Tucker Act refers to regulations of an "executive department." Assuming that either the employee handbook or the procedures manual relied upon by plaintiffs here could be said to constitute a regulation, it is not the regulation of an executive department. Plaintiffs are Senate employees. Plaintiffs' response to this difficulty is that it is not the regulation itself but the implied contract it spawns that creates the substantive rights. That argument is wholly unpersuasive, but more importantly, the court has found that there was no contract, even assuming plaintiffs can rely on the employee handbook or the procedures manual.

to employment: "The Constitution protects the plaintiffs' contract with the United States Senate." Plaintiffs' Opposition to Motion to Dismiss at 7. As discussed above, this circular reasoning is falsely premised—there was no contract. Moreover, the cases that plaintiffs rely upon suggest an additional error in analysis. Plaintiffs contend that representations made by federal agencies to employees in employment handbooks establish actionable contracts. The cases cited for that proposition, however, all derive from the now-familiar principle that a government employee who has a property interest in his job may not be deprived of it without due process of law. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In examining that issue, courts do indeed look to the rules or understandings governing the terms of employment. These and succeeding cases pointed to by plaintiffs, however, were not contract actions and were not brought pursuant to the Tucker Act.[5] The relief sought in each instance was procedural due process, such as a hearing before or after discharge. As discussed previously, this court is not empowered to grant such relief.

More importantly, however, the cases have no relevance in deciding whether a contract exists here. The threshold at which constitutional property interests are implicated is lower and more inclusive than the showing required to establish a contractual relationship. While it follows from *Perry* and *Roth* that a contractual right is a protectible property interest, *see Sullivan v. Stark,* 808 F.2d 737, 740 (10th Cir.1987), the reverse is not necessarily true. Not all constitutionally protected property interests arise out of contracts. The difficulty that employees in a *Perry* situation face is precisely that they do *not*

have contractual rights to employment. In recognition of that, the Supreme Court held in *Perry* and *Roth* that under certain circumstances employees with no contractually enforceable right to employment or to administrative procedures nevertheless have constitutionally protected property interests. It is impossible, therefore, to rely on this line of cases granting procedural due process for the proposition that wherever constitutionally recognized rights exist, there is an enforceable contract. If that were the case, *Perry* and *Roth* would have been superfluous.

■ In *Kizas v. Webster,* 707 F.2d 524 (D.C.Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984), the Court of Appeals for the District of Columbia dealt with a similar argument. There, employees of the F.B.I. alleged that the agency had a long-standing practice of according preferences in certain desirable appointments to its clerical employees. They contended that a change in that practice deprived them of a property right and constituted a taking without compensation in violation of the fifth amendment. The district court agreed, relying, as do plaintiffs here, on due process cases in concluding that the preference was a "vested contractual right." The appellate court disagreed:

> Neither the [district] court nor the employees, however, examined the presupposition that underlies reliance on these cases: that a "legitimate claim of entitlement" rises to the level of "property" protected by the taking clause.
>
> This presupposition is without foundation....
>
> ....
>
> ... Broad due process "property" concepts are therefore inapposite to the question whether the preference was an element of deferred compensation....

---

5. *See, e.g., Whitfield v. Finn,* 731 F.2d 1506 (11th Cir.1984) (§ 1983 action claiming termination without a hearing was improper); *Vinyard v. King,* 728 F.2d 428 (10th Cir.1984) (action under 42 U.S.C. § 1983 alleging that termination without a just cause hearing was unconstitutional); *Bueno v. City of Donna,* 714 F.2d 484 (5th Cir. 1983) (action under 42 U.S.C. §§ 1985 and 1986

alleging that forced resignations without a statement of reasons or the right to a hearing violated due process); *Ashton v. Civiletti,* 613 F.2d 923 (D.C.Cir.1979) (holding that termination from the F.B.I. by reason of the employee's admission of homosexuality, without a hearing prior to discharge, denied the employee due process).

*Id.* at 539–40. Similarly here, plaintiffs cannot succeed in bolstering their contract claim by relying on inapposite considerations of procedural due process. Their constitutional claim is thus without legal support.[6]

### III. *Conclusion*

The complaint fails to state a claim upon which relief can be granted. The complaint is therefore dismissed. The Clerk is directed to enter judgment for defendant. Costs to defendant.

---

**6.** The complaint recites that plaintiffs had a "reasonable expectation of continued employment" based on conversations, long careers, and lack of previous similar discharges. The allegation of such an expectation, while possibly relevant in a different forum in a procedural due process analysis, does not assert the existence of a contract.