**Richard V. LINDSEY, and Mary Lindsey, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 96–488C.

United States Court of Federal Claims.

March 12, 1997.

---

**426**

Bruce A. Salzburg, Cheyenne, WY, for plaintiffs.

Hillary A. Stern, Department of Justice, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Sharon Y. Eubanks, Deputy Director, all of Washington, DC, for defendant.

## OPINION

BRUGGINK, Judge.

This is an action for breach of contract by a former Peace Corps employee. Pending is defendant's motion to dismiss under, alternatively, RCFC 12(b)(1) or (b)(4).[1] Oral argument is deemed unnecessary. For the reasons set out herein, the motion is granted for failure to state a claim.

## BACKGROUND

The facts are drawn from the complaint and from plaintiff's brief. After "discussions and negotiations," plaintiff Richard Lindsey[2] was employed by the Peace Corps in the position of Country Director for the Republic of Botswana. The term of the appointment was thirty months. The Standard Form (SF) 50–B notification lists the appointment

as "excepted service," the term as indefinite, the pay plan as Foreign Service, and the appointment authority as Section 7(A) of the Peace Corps Act. The complaint alleges that Peace Corps officials assured Lindsey that there would be suitable and adequate housing for his family in Botswana.

The Country Director's residence was in fact uninhabitable, so Lindsey was moved to an alternate residence, which was also uninhabitable because there was no carpeting; the bedroom windows were not covered; plumbing in the kitchen was in disrepair; there was no room for storage of personal items; no cooking supplies or utensils were supplied; the residence was constructed using asbestos-containing materials; and the house lacked "embassy-standard" security features. After Lindsey's family moved in, two poisonous snakes were found on the premises and the Lindseys' infant daughter was afflicted by insect bites of unknown origin. Efforts to find more suitable housing failed.

Mrs. Lindsey contends that, at the time her husband negotiated for his appointment, Corps personnel were aware that she ran an economic consulting business from her home. It was agreed that she could continue the business by telephone from Botswana. Unfortunately she was unable to establish the telephone links necessary to maintain this business once the Lindseys relocated to Botswana.

Lindsey alleges that his relationship with the Corps was contractual in nature. A contract is evidenced, he says, by the SF 50–B. Although not referred to in the SF 50–B or in the relevant statutory pay provision, Lindsey contends that one of the terms of the agreement was that he would be furnished suitable housing. This promise, he contends, is made in the Peace Corps Manual. In Count I of the complaint, he contends that the provision of adequate housing was a ma-

---

1. The possibility that a contract did not in fact arise under the facts alleged does not mean the court lacks subject matter jurisdiction. What is alleged is a contract. Normally that will be the end of the inquiry under RCFC 12(b)(1). The real deficiencies in this complaint are addressed more appropriately under RCFC 12(b)(4), failure

to state a claim upon which relief can be granted.

2. The court will use the singular plaintiff, or "Lindsey," despite the fact that both Mr. and Mrs. Lindsey are named plaintiffs.

terial element of the contract. The housing Lindsey was offered was, he felt, unsuitable. He chose to treat these circumstances as a breach of contract. Lindsey resigned from the Peace Corps and was unemployed for a time. His resignation was, he argues, a constructive discharge. He seeks damages primarily consisting of lost wages. In Count II Mary Lindsey seeks to recover $6,000 in lost income. These are alleged to be consequential damages from a breach of the contract asserted between her husband and the Corps.

## DISCUSSION

The Peace Corps is an independent executive branch agency. 22 U.S.C. § 2501–1 (1994). Employees are entitled to the pay and benefits of the Foreign Service Personnel System (FSPS), established under sections 402 and 403 of the Foreign Service Act of 1980. 22 U.S.C. § 2506(a)(1); *see* 22 U.S.C.A. §§ 3962, 3963. Country directors, such as Mr. Lindsey, are appointed under 22 U.S.C. § 2506(c). They serve at the pleasure of the President. *Id.*

■ The Government focuses on whether this court has jurisdiction to hear appeals from terminations of federal employment. It contends that this court has no jurisdiction over an appeal from a constructive termination. Mr. Lindsey's rights to challenge his termination, if any, the Government argues, are controlled by the Foreign Service Act. This seems to be borne out by the language of the Peace Corps Act, Pub.L. 87–293, which grants country directors the same pay and benefits as persons in the Foreign Service. *See* 22 U.S.C. § 2506. As the defendant correctly points out, the legislative history behind the act suggests strongly a Congressional intent to utilize the FSPS for Corps employees. *See* S.Rep. No. 89–267, at 8–9 (1965), *reprinted in* 1965 U.S.C.C.A.N. 2763. H.Rep. No. 89–530, at 11 (1965).[3] All Corps employees are presumptively given time-lim-

ited appointments, however. *See* 22 U.S.C. § 2506.

Consistent with this statutory scheme, Mr. Lindsey's SF 50–B states that he was appointed pursuant to Section 7(A)(2) of the Peace Corps Act. That section, as stated above, refers to the Foreign Service Act as the source of Corps employees' rights and benefits. Because he has whatever rights are available to Foreign Service employees, the Government contends, Lindsey has no implied right of access to this court to enforce a statutory right to continued pay, citing *United States v. Fausto*, 484 U.S. 439, 455, 108 S.Ct. 668, 677–78, 98 L.Ed.2d 830 (1988), and *United States Information Agency v. Krc*, 989 F.2d 1211, 1217 (D.C.Cir.1993).

Mr. Lindsey responds that he does not, in fact have the protection afforded Foreign Service employees. He supports this proposition by reference to the Peace Corps Manual, which states the following:

> The Peace Corps Personnel System is unique. While it is based upon the Foreign Service Personnel System, it is different from the career Foreign Service in that, pursuant to Section 7(a)(2) of the Peace Corps Act, Peace Corps employees have excepted service, time-limited, non-career appointments and they are not eligible for the full range of allowances and benefits provided for the career Foreign Service.

Peace Corps Manual, MS 601, § 2.1. There is a flaw in plaintiff's analysis. The manual does not withdraw Peace Corps employees from the Foreign Service Personnel System (FSPS). It merely states what the Peace Corps Act states, namely, that the appointments are time-limited and hence non-career. The fact that such appointees do not have, by virtue of inherent statutory limitations, the full panoply of removal protection does not mean they are not otherwise subject to the FSPS.

Members of the Foreign Service are granted by statute certain rights to challenge

---

**3.** Amendments to the statutory provisions in 1980, although making several changes, confirmed the prior designation of Peace Corps employees as members of the foreign service. Foreign Service Act of 1980, Title II, Chapter 1,

Pub.L. No. 96–465 (codified at 22 U.S.C. § 2506(a)(1)). *Accord* S.Rep. No. 96–913, at 17 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4419, 4434, 4435.

agency action, including involuntary separation. *See* 22 U.S.C. §§ 4131–4140 (1994). Part of the appeal process is a right to court review in the district courts. 22 U.S.C. § 4140. Within that framework, however, Peace Corps employees do not have appeal rights or a right to court review from involuntary discharges. 22 U.S.C. § 4131(c). They are treated as excepted service employees and thus ineligible, with one exception,[4] to challenge discharges under either the Civil Service Reform Act of 1978, codified at various places in 5 U.S.C., or the FSPS. *See Polsdorfer v. Gearan,* No. 96–78, 1996 WL 451051 (D.D.C. August 1, 1996); *Acting Special Counsel v. United States Customs Service,* 31 M.S.P.R. 342 (1986); *Special Counsel v. Peace Corps,* 31 M.S.P.R. 225 (1986).

Thus, although Peace Corps country directors are brought within the FSPS for pay and other purposes, they do not have, insofar as relevant here, appeal rights to the FSPS Grievance Board, the Merit Systems Protection Board, or the district courts, from constructive terminations. By fair implication, however, Congress did not mean to leave an alternative remedy in this court to fill that gap. *See Fausto,* 484 U.S. at 448, 108 S.Ct. at 674; *Krc,* 989 F.2d at 1217. For that reason, plaintiff's attempt to draw from the facts a right to challenge his "termination" in this court under the Tucker Act, 28 U.S.C. § 1491, must fail.

The assumption, in any event, that underlies Mr. Lindsey's claim of improper termination—namely, that he had a contract with the Government for employment, one of the terms of which was that he would be furnished adequate housing—is incorrect. It is well settled, that absent an explicit agreement to the contrary, federal employment does not create a contractual relationship. *Chu v. United States,* 773 F.2d 1226, 1229 (Fed.Cir.1985) (referring to the "well-established principle that absent specific legislation, federal employees derive the benefit of their positions from appointment rather than from a contractual or quasi-contractual relationship with the government."). *See also Kania v. United States,* 227 Ct.Cl. 458, 464–

65, 650 F.2d 264, 268; *Shaw v. United States,* 226 Ct.Cl. 240, 251, 640 F.2d 1254, 1260 (1981); *Berry v. United States,* 27 Fed.Cl. 96, 100 (1992); *House v. United States,* 14 Cl.Ct. 32, 36 (1987). The presumption which attaches to plaintiff's employment, therefore, is that it is a routine appointment, not a contract.

Nor can the necessary contract rights be found in the Corps' internal manual. The terms of the manual do not change the essential nature of the relationship between Lindsey and the Corps as one of appointment. *Army and Air Force Exch. Serv. v. Sheehan,* 456 U.S. 728, 739–40, 102 S.Ct. 2118, 2124–25, 72 L.Ed.2d 520 (1982); *Phaidin v. United States,* 28 Fed.Cl. 231, 235 (1993); *House,* 14 Cl.Ct. at 36–37. There having been no breach of contract, Count I must be dismissed for failure to state a claim.

Count II also cannot be sustained. No contract is alleged as between Mrs. Lindsey and the Corps. As a stranger to the relationship between her husband and the Government, she has no standing to seek damages for breach of contract.

The Clerk is directed to dismiss the complaint. No costs.

---

4. The Foreign Service grievance process has been extended to terminations for disciplinary reasons. *See Polsdorfer,* 1996 WL 451051, at *2 n. 6.