**J. Murray PINKSTON**

v.

**The UNITED STATES.**

No. 484–83C.

United States Claims Court.

Sept. 14, 1984.

William G. Beanland, Vicksburg, Miss., for plaintiff.

Sharon Y. Eubanks, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

YOCK, Judge.

The plaintiff, J. Murray Pinkston, instituted this action seeking to recover $300,-000 in damages plus interest for the alleged illegal cancellation of a contract between plaintiff's business entity, known as Mississippi Editors, and the United States Army Corps of Engineers. Defendant filed a motion to dismiss, asserting this Court's lack of jurisdiction over plaintiff's contract claims. Plaintiff filed a response asserting jurisdiction in this Court based on a general tort theory. Whether plaintiff has brought this suit in contract or in tort, for the reasons discussed below, the defendant's motion to dismiss is granted.

*Facts*

At various times during 1975, plaintiff performed editing, drafting, and typing services for the Army Corps of Engineers (Corps), under individual work orders, on an "as needed" basis. In 1976, the Corps issued to the plaintiff's business entity known as Mississippi Editors, a purchase order, for an amount not to exceed $10,000, for these services. After advertising for a contractor to perform graphic services and following negotiations with the plaintiff, a one year contract to perform the above work was issued to Mississippi Editors by the Corps in 1977. The following year, in 1978, a similar contract to provide graphic services was again awarded to Mississippi Editors. This contract was a requirements type services contract which specified certain fixed prices per page for editing, typing and drafting technical reports. The term of the contract was one year, renewable thereafter by the mutual agreement of the parties for successive one year terms not to exceed three years. In 1981, after competitive negotiations, a similar graphic services contract was awarded to Mississippi Editors. In 1982, the Corps declined to renew the 1981 contract.

Beginning in 1978, the plaintiff came under investigation by the Federal Bureau of Investigation, and the Office of the Inspector General and the Criminal Investigation

Division of the United States Army, for alleged misconduct in obtaining the above contracts. No formal charges, however, ever resulted from these investigations.

For the purposes of this motion, the defendant has acknowledged that the plaintiff extended its business operations by increasing its staff and by acquiring new equipment during the seven plus years that it was performing work for the Corps. However, no claim for these increased costs, contract-related or otherwise, was presented by Mississippi Editors to the Government's contracting officer.

On July 29, 1983, the plaintiff filed a complaint in this Court seeking $300,000 in damages plus interest, representing the estimated value of the 1981 contract, had it been renewed in 1982 and 1983, the cost of equipment purchased to perform the contract services, and the cost of contract related improvements on the building occupied by the plaintiff. In addition, plaintiff asserted in his complaint that the "extensive, harassing and degrading investigation," leading to no formal charges, was an "unlawful, surreptitious and clandestine" interference with his business. Further, he contended that the investigation resulted in his "constructive, unlawful suspension, debarrment [sic] or blacklisting." On September 27, 1983, defendant moved to dismiss, asserting that this Court lacked jurisdiction to hear plaintiff's claims under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–613 (1982). In support of its motion, defendant asserted that plaintiff had failed to submit a claim for a contracting officer's final decision, as required by 41 U.S.C. § 605(a), and had also failed to certify its claim, as required by 41 U.S.C. §§ 605(a), (c)(1) (1982).

Plaintiff responded that the instant suit had not been brought under the CDA, but, rather, on a general tort theory.[1] In its reply brief, defendant reiterated its request for dismissal, contending that this Court

also has no jurisdiction over any actions sounding in tort.

### Discussion

■■■ The U.S. Claims Court's jurisdiction is founded upon the Tucker Act, 28 U.S.C. § 1491 (1982), which allows judgment to be rendered upon claims founded upon the Constitution, statutes, regulations, or any express or implied contract. The Court is a court of limited statutory jurisdiction which cannot be expanded beyond the bounds established by the Congress. See *Transcountry Packing Co. v. United States*, 215 Ct.Cl. 390, 395, 568 F.2d 1333, 1336 (1978); *ATL, Inc. v. United States*, 4 Cl.Ct. 672, 676 (1984); *Dynalectron Corp. v. United States*, 4 Cl.Ct. 424, 428 (1984); *Wheeler v. United States*, 3 Cl.Ct. 686, 689 (1983). As a result, this Court must dismiss a case over which it has no jurisdiction conferred by statute. *Fidelity and Deposit Co. of Maryland*, 2 Cl.Ct. 137, 142 n. 12 (1983). In so doing, however, this Court must carefully examine a party's complaint and allied documents to ascertain the basis for jurisdiction in this forum, see, e.g., *Mason v. United States*, 222 Ct.Cl. 436, 442, 615 F.2d 1343, 1346, cert. denied, 449 U.S. 830, 101 S.Ct. 98, 66 L.Ed.2d 35 (1980); see *Fidelity and Deposit Co. of Maryland, supra*, 2 Cl.Ct. at 142.

In this case, the plaintiff's complaint and other papers do not make totally clear whether the basis for this Court's jurisdiction is based on a contract theory or a tort theory. The complaint would indicate that the plaintiff's case is based on a contract damage theory for jurisdiction whereas his response brief would indicate that his case is based on tort. What is totally clear, however, is that under either a contract or a tort theory, the plaintiff has not established jurisdiction in this Court.

### A. Contract Disputes Act

The CDA sets forth the procedures for the submission and resolution of contract

---

1. Plaintiff carefully stated that jurisdiction was not based on the Federal Tort Claims Act, 28

U.S.C. §§ 1346(b), 2671–2680 (1982).

claims against the Government. Congress intended the Act to provide a "fair, balanced, and comprehensive statutory scheme of legal and administrative remedies in resolving government contract claims." S.Rep. No. 1118, 95th Cong., 2d Sess. I, *reprinted in* 1978 *U.S.Code Cong. and Ad.News* 5235. The contract between Mississippi Editors and the Corps expressly incorporated these procedures for resolving disputes and specifically made the instant contract subject to the CDA.

The CDA provides a contractor with two exclusive avenues of review of a contracting officer's decision. The contractor can either appeal the contracting officer's decision through the agency's administrative contract appeals process, with a right of subsequent judicial review, 41 U.S.C. § 607 (1982), or the contractor can appeal the decision directly to the United States Claims Court, 41 U.S.C. § 609 (1982). *See Skelly and Loy v. United States,* 231 Ct.Cl. 370, 376, 685 F.2d 414, 418 (1982); *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 181, 645 F.2d 966, 972 (1981).

■ However, before any of the statutorily created procedures are triggered, a "claim" must be submitted by the contractor to the contracting officer. 41 U.S.C. § 605, DAR 1–314 (FPR 1–1.318), *Skelly and Loy, supra,* 685 F.2d at 414; *Fidelity and Deposit Co. of Maryland, supra,* 2 Cl.Ct. at 143; *see Paul E. Lehman, Inc. v. United States,* 230 Ct.Cl. 11, 13, 673 F.2d 352, 353 (1982); *W.H. Moseley Co. v. United States,* 230 Ct.Cl. 405, 406, 677 F.2d 850, *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982). Plaintiff fails to provide any evidence that it has satisfied this basic statutory requirement. According to the contract, a claim "means (1) a written request submitted to the Contracting Officer (2) for payment of money, adjustment of contract terms, or other relief; (3) which is in dispute or remains unresolved after a reasonable time for its review or disposition by the Government; and (4) for which a Contracting Officer's decision is demanded." Thus, plaintiff's failure to properly file a claim with a government contracting officer precludes this Court from asserting jurisdiction over this action.

■ Further, plaintiff failed to satisfy the certification requirements set forth in the CDA. The CDA, 41 U.S.C. § 605(c)(1) (1982), provides:

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

The contract in the instant case contains a certification provision almost identical to that found in the CDA. The requirement that claims over $50,000 be certified is an important part of the CDA and was intended to deter contractors from filing inflated or unwarranted claims. *Paul E. Lehman, Inc., supra,* 230 Ct.Cl. at 14, 673 F.2d at 354. This certification, which cannot be waived by the contracting officer, is necessary for a claim to be properly submitted to a Government contracting officer, an agency's contract board of appeal, or this Court. *Paul E. Lehman, Inc., supra,* 230 Ct.Cl. at 13, 673 F.2d at 354; *W.H. Moseley Co., supra,* 230 Ct.Cl. at 406, 677 F.2d at 851–52; *Fidelity and Deposit Co. of Maryland, supra,* 2 Cl.Ct. at 143.

■ As Judge Bennett stated in *Skelly and Loy:*

> Since the Act specifies that certification is to take place in the first instance—on submission of a claim to the contracting officer—a contractor who did not so certify would not only be barred from the direct access route, but from the board route as well.

231 Ct.Cl. 376, 685 F.2d at 418. Accordingly, the courts have repeatedly held that on claims over $50,000 a certification is necessary to confer the court with jurisdiction. Thus, absent certification, a contract claim in excess of $50,000 cannot be heard by this Court. *Essex Electro Engineers, Inc. v. United States,* 702 F.2d 998, 1004 (Fed.Cir.1983); *Paul E. Lehman, Inc., su-*

*pra*, 230 Ct.Cl. at 16, 673 F.2d at 355. Since the plaintiff has failed to certify its claim for over $300,000, this Court is precluded from accepting jurisdiction to adjudicate plaintiff's case under the CDA.

### B. Torts Jurisdiction

In its response to defendant's motion to dismiss, plaintiff stated that "[t]he claim is not the typical one requesting payment of money, adjustment of contract terms or other relief with respect to a contract in being," but, rather, asserted that its claim is "based on a wide variety of illegal, tortious, and improper activities on the part of the Government which led to Plaintiff's losses." These damages were alleged to be "arising out of Government action, interference and harrasment [sic] which would not be cognizable under the Federal Tort Claims Act." Apparently, plaintiff thus asserts jurisdiction to recover damages under a new, somewhat nebulous and evanescent tort theory previously not recognized by this Court. Unfortunately, as mentioned above, this Court has a statutorily restricted jurisdiction that the plaintiff, acting without the imprimatur of Congress, cannot broaden.

■ Specifically, the Tucker Act, 28 U.S.C. § 1491 (1982) provides in pertinent part:

(a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages *in cases not sounding in tort.* [Emphasis added.]

Thus, it cannot be more clearly expressed that this Court does not possess the ability to hear any cases sounding in tort. *Tree Farm Development Corp. v. United States*, 218 Ct.Cl. 308, 316, 585 F.2d 493, 498 (1978); *Transcountry Packing Co. v. United States, supra*, 215 Ct.Cl. at 395, 568 F.2d at 1336 (1978).

Illustrative of the Court's position is *Berdick v. United States*, 222 Ct.Cl. 94, 100, 612 F.2d 533, 536 (1979), in which this Court concluded that it had no jurisdiction to hear tort claims alleging defamation, intentional infliction of emotional distress, or tortious interference with business relationships. Since plaintiff's claims of "interference and harrasment [sic]," are tort claims, as plaintiff contends, this Court lacks jurisdiction, under either 28 U.S.C. § 1491 (1982) or otherwise. *Conrad v. United States*, 227 Ct.Cl. 624 (1981); *Algonac Manufacturing Co. v. United States*, 192 Ct.Cl. 649, 663, 428 F.2d 1241, 1249 (1970), *opinion supplemented*, 198 Ct.Cl. 258, 458 F.2d 1373 (1972).

■ Plaintiff's tort claims cannot form the basis for jurisdiction in this Court. If plaintiff is to recover here, his jurisdiction must be contractual in nature. As was discussed above, plaintiff has also failed to comply with the procedures for the submission and resolution of a contract claim against the Government as set forth in the CDA.

### CONCLUSION

For the reasons discussed above, the defendant's motion to dismiss is granted, and the complaint is to be dismissed.