Glen GATES, Plaintiff,

v.

UNITED STATES, Defendant.

No. 93–698C.

United States Court of Federal Claims.

March 9, 1995.

cised on or before the day the annual lease payment is due, without becoming liable for the yearly lease payment. The consequences of granting the government's motion for summary judgment would be to create a very rigid, arguably Draconian, rule that is inconsistent with the statutory scheme and past agency practice. However, denying the government's motion may grant the plaintiff little relief since the damages plaintiff seeks appear to be the result of a failure to mitigate damages and specific performance of this option cannot be awarded against the United States. Since the land is now lying fallow, awaiting resolution of this dispute, and since the plaintiff wants to *buy* the land, and the government wants to *sell* the land, a settlement would help each side achieve its objective. In contrast, because any decision on the motion for summary judgment would leave both sides unsatisfied, the court has orally ordered each side to enter into serious negotiations in light of the views expressed herein. Each side is to report back on or before March 21, 1995 at 3:00 p.m. EST.

This case comes before the court on defendant's motion to dismiss in part and motion for summary judgment in part. For the reasons stated below, defendant's motion to dismiss in part is granted and defendant's motion for summary judgment in part is taken under advisement pending settlement discussions between the parties.

Thomas K. Schoppert, Minot, ND, for plaintiff.

John C. Erickson III, Dept. of Justice, Commercial Litigation Branch, Civ. Div., Washington, DC, with whom were Anthony H. Anikeeff, Asst. Director, David M. Cohen, Director, and Frank W. Hunger, Asst. Atty. Gen., for defendant. Brian T. Cody, Office of Gen. Counsel, Dept. of Ag., of counsel.

## OPINION

SMITH, Chief Judge.

This case concerns a dispute over whether an option to purchase, in an agricultural lease with the government, can only be exer-

### FACTS

The plaintiff, Mr. Glen Gates, is suing the Farmer's Home Administration (FmHA) for breach of contract relating to a lease agreement between the parties. On June 9, 1989, Mr. Gates and FmHA entered into a lease agreement pursuant to the 1987 Agricultural Credit Act, 7 U.S.C. § 1981 *et seq.,* for property previously owned by Mr. Gates. The lease ran from June 9, 1989, until December 31, 1993. It contained an option to purchase which could be exercised at any time during the lease, and required an annual lease payment of $19,444 on or before April 1 of each year. It also contained a provision requiring

the lease not be in default when the option was exercised.[1]

In 1991, Mr. Gates failed to make a lease payment on or before April 1. On April 3, 1991, the FmHA received a notice of intent to exercise the option to purchase from Mr. Gates, which was dated April 1, 1991, and postmarked April 2, 1991. On April 3, 1991, the FmHA sent two letters to Mr. Gates. The first was a notice of default, giving him thirty days or until May 2, 1991, to either cure the default or quit the property. The second letter refused to accept the option to purchase because Mr. Gates was in default at the time he attempted to exercise it. On May 6, 1991, the FmHA terminated the lease.

On May 14, 1991, Mr. Gates filed an administrative challenge to the termination. On July 18, 1991, the initial decision of the FmHA County Supervisor not to allow Mr. Gates to exercise his option to purchase because the lease was in default was overturned by a FmHA Hearing Officer. The decision of the hearing officer was upheld on administrative appeal on September 13, 1991, by the FmHA National Appeals Staff's Acting Director. The September 13, 1991, administrative decision stated that the option to purchase was properly exercised because it was exercised before the lease was terminated, even though Mr. Gates was in default by failing to make his lease payment. The Acting Director explained that the thirty day extension kept the lease in effect until at least May 2, 1991, so Mr. Gates could exercise his option until the end of the extension period. However, the Acting Director also noted that the exercise of the option to purchase while in default was only ultimately valid subject to curing the default.[2]

On October 22, 1991, the FmHA offered the property for sale to Mr. Gates, provided he pay the lease payment due in addition to the purchase price. On November 22, 1991, Mr. Gates commenced a second administrative challenge, this time contesting the appraised purchase price. On April 10, 1992, the FmHA determined that the appraisal purchase price was correct, which was set at $260,400, and Mr. Gates did not appeal that decision. On July 2, 1992, the FmHA again offered the property for sale to Mr. Gates under the condition that he pay the purchase price plus the April 1, 1991, lease payment. Mr. Gates did not act on that offer, and it expired on August 2, 1992.

On October 16, 1993, the FmHA offered the land for sale to the public for $211,200,[3] with all bids due by November 15, 1993. On November 12, 1993, Mr. Gates submitted a bid, but FmHA rejected it as incomplete. Mr. Gates then filed this action on November 15, 1993.[4]

Plaintiff seeks specific performance in the form of having this court direct FmHA to sell the property at issue to him at the price it was offered to the public in October, 1993.

---

1. An amendment to the lease, executed the same date as the rest of the lease, stated in part:

   OPTION TO PURCHASE.—Provided Lessee is not then in default under the terms of the Lease and provided this lease has not been previously terminated or cancelled, then Lessor gives the Lessee the option to purchase the real property described in this lease.
   The Lessee may exercise the option to purchase at any time prior to the expiration of the Lease by delivering to the FmHA County Supervisor a signed, written statement notifying FmHA that the Lessee is exercising the option to purchase the property. Failure to exercise the option within the lease term will end Lessee's rights under the option to purchase.

2. The September 13, 1991, decision stated, in pertinent part:

   Specifically, FmHA must accept your timely option to purchase because the lease in question was in effect when you exercised your option on April 1, 1991. However, it should be noted that under the terms of the Amendment to the Lease dated June 9, 1989, you must cure your delinquency to FmHA in the amount of $19,444 which represents the cash rent due to FmHA on April 1, 1991. This cash rent was due prior to FmHA's receipt of your option to purchase (which FmHA received on April 3, 1991) and must be paid before the option to purchase can be finalized.

3. At oral argument held on March 2, 1995, plaintiff's attorney suggested that the property's value diminished because the United States Fish and Wildlife Service had placed some new easements on the property, and that since the land had been fallow for two years there had been excessive weed growth.

4. On November 17, 1993, the plaintiff also filed a notice of *lite pendente* in the state of North Dakota, thereby preventing the FmHA from selling the property pending the outcome of this litigation.

In addition, plaintiff seeks damages in excess of one million dollars for emotional distress, lost business opportunities, and lost profits due to the alleged breach of contract.

## DISCUSSION

### I. Specific Performance

■ Plaintiff seeks to have this court overturn the 1991 appraisal, prevent the sale of the property to the public at auction, and require the sale of the property to Mr. Gates at the 1993 appraisal price. In effect, Mr. Gates seeks specific performance on his option to buy the property at the price set in 1993. Claims for specific performance are not generally within the Court of Federal Claims' subject-matter jurisdiction. The Court of Federal Claims cannot order the United States to perform, regardless of whether the agreement is in the form of a contract or a lease. *See, e.g., Coggeshall Dev. Corp. v. United States,* 23 Cl.Ct. 739, 744 n. 7 (1991), *appeal dismissed,* 33 F.3d 64 (citing *Florida Dept. of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982)) (stating that "neither the Claims Court nor federal district courts may order specific performance by the United States of alleged contract obligations") (citation omitted); *Edwards v. United States,* 19 Cl.Ct. 663, 668 n. 5 (1990) (citations omitted); *Cleveland v. United States,* 9 Cl.Ct. 741, 746 (1986); *Jesko v. United States,* 3 Cl.Ct. 730, 732–33 (1983), *aff'd,* 790 F.2d 94 (Fed.Cir.1986) (without opinion). This court lacks jurisdiction to order specific performance in this case, and therefore, must grant defendant's motion to dismiss on this count.

### II. Monetary Damages

#### A. Emotional Distress and Loss of Reputation

■ Plaintiff seeks monetary damages for emotional distress and lost business opportunities. With respect to claims for emotional distress, the court has long stated that it does not have jurisdiction to hear such claims because they sound in tort. *See, e.g., Mangual v. United States,* 27 Fed.Cl. 480, 486 n. 4 (1993); *Clark v. United States,* 19 Cl.Ct. 220, 224 (1990) (noting that the Court of Federal Claims does not have jurisdiction over cases sounding in tort); *Pinkston v. United States,* 6 Cl.Ct. 263, 267 (1984) (finding that the Court of Federal Claims has "no jurisdiction to hear tort claims alleging defamation, intentional infliction of emotional distress, or tortious interference with business relationships"); *Berdick v. United States,* 222 Ct.Cl. 94, 100, 612 F.2d 533, 536 (1979). The Court of Federal Claims has also noted that claims for lost business opportunities are not within its subject-matter jurisdiction. *See, e.g., Smokey Bear, Inc. v. United States,* 31 Fed.Cl. 805, 808 (1994); *Solar Turbines, Inc. v. United States,* 23 Cl.Ct. 142, 159–60 (1991); *H.H.O., Inc. v. United States,* 7 Cl.Ct. 703, 706–07 (1985); *Olin Jones Sand Co. v. United States,* 225 Ct.Cl. 741, 744 (1980). During oral argument plaintiff's counsel conceded that the claims for damages from emotional distress and lost business opportunities were not within this court's jurisdiction and made no attempt to resist the government's motion to dismiss these claims. Therefore, because this court lacks jurisdiction over these claims, defendant's motion to dismiss plaintiff's claims for monetary damages for emotional distress and lost business opportunities must also be granted.

#### B. Lost Profits

This court does have jurisdiction over plaintiff's claim for lost profits due to the government's alleged breach of contract. *Goolsby v. United States,* 21 Cl.Ct. 88, 91 (1990). The main issue is whether FmHA breached its lease agreement with Mr. Gates when it refused to sell the property to him after he executed his option to purchase without first making the April 1, 1991, lease payment. Defendant contends that Mr. Gates was in default, and therefore unable under the terms of the amendment to exercise his option, and that even if he was, the FmHA afforded Mr. Gates two additional opportunities to purchase the property. The government also contends that because there are no genuine issues of material fact in dispute, as a matter of law its motion for summary judgment should be granted. Plaintiff argues that he validly exercised his option on April 1, 1991, and therefore was not required to tender the lease payment.

At oral argument the government requested a bench ruling to expedite the litigation in order to sell the property and put it to productive use.[5] According to his counsel, Mr. Gates wants nothing more than to get his property back and put it to productive use. From the court's perspective, this dispute is tailor-made for a negotiated settlement. In pursuit of that goal, this court strongly urges the parties to attempt to settle this matter, and hereby sets a telephone status conference for March 21, 1995, at 3:00 pm EST, at which time the parties shall inform the court of the progress on their settlement negotiations. This court stands willing to provide whatever assistance is necessary to bring a settlement to fruition, including an expedited hearing to suggest an acceptable purchase price.

However, should the unfortunate circumstance arise in which the parties cannot reach a settlement, this court must still rule on the defendant's motion for partial summary judgment. It may be useful for settlement purposes for the court to set out its thinking on the shape of a decision. The court is troubled by the government's harsh penalty scheme in this case. In effect, Mr. Gates was one or at worst two days late in exercising his option to purchase. Under the government's theory, Mr. Gates could have exercised his purchase option on March 31, 1991, and avoided making the April 1, 1991, lease payment of $19,444. Because Mr. Gates was one or two days late he was penalized seven and one-half percent of the total purchase price! No mortgage or other credit instrument to the court's knowledge has such a Draconian late payment penalty. Mortgage or lease penalties are typically limited to five or ten percent of *a single monthly lease payment*, which usually amounts to a very small percentage of the total purchase price.

Further, given that the Agricultural Credit Act of 1987 is remedial in nature, its purpose being to effectuate the leaseback and eventual sale to farmers of their previously foreclosed property, the defendant's position appears to frustrate congressional intent. In addition, the previous year the FmHA accepted payment some two and a half months late without any penalty! Lastly, the government had some notice that Mr. Gates wanted to exercise his option to purchase because he called the FmHA on March 26, 1991, to make inquiries about the procedures for doing so. Thus, the government's request for partial summary judgment on this issue reminds the court of Shylock's pronouncement to the Duke: "The pound of flesh which I demand of him is dearly bought, is mine, and I will have it. If you deny me, fie upon your law!"[6]

On the other hand, the court is also troubled by Mr. Gates' failure to cure his default. Mr. Gates' theory that once the option to purchase was exercised, the lease no longer had any effect and vitiates any default is conceptually appealing, but practically speaking it was quite a risky posture. Mr. Gates, by choosing to argue his theory, allowed an entire crop year to pass without production. Mr. Gates could have chosen two, safer courses of action: one, he could have simply paid the $19,444 lease payment, thereby curing his default, and waited until 1992 to exercise his option to purchase; or two, Mr. Gates could have paid the lease, thereby curing his default, exercised his option, and then sued for a refund in this court. Instead, Mr. Gates apparently took a course that maximized his damages and insured that the land would remain idle. The concept of damage mitigation plays an important role in the law of contracts, and does not allow Mr. Gates to impose these losses upon the government. If Mr. Gates had cured the default in a timely manner such that the crop season would not have been lost, Mr. Gates would not have any damages from lost profits, and this litigation would be over a far smaller amount.

---

5. It should be noted that it is now March, and that, assuming this court granted the government's motion for summary judgment, Mr. Gates' rights of appeal would effectively make the likelihood of the property being productive this year minimal at best. Even the prospects for the 1996 planting season are problematic for this property if this litigation continues.

6. WILLIAM SHAKESPEARE, THE MERCHANT OF VENICE 69 (David Bevington ed., Bantam Books 1980).

The most difficult aspect of ruling on defendant's partial summary judgment motion is that granting it creates an unreasonable rule of law, and denying it leaves both parties in a lose-lose situation where neither party is likely to be satisfied with the result. A quick settlement, however, might save the 1995 planting season and equitably allocate the losses both parties have already suffered, as well as minimize future losses. *This is especially true in light of the fact that plaintiff wants to own this land and the government wants to sell it!* Therefore, for the reasons stated above, the defendant's motion for summary judgment in part is taken under advisement pending the outcome of settlement negotiations.

IT IS SO ORDERED.