**Rose COTTRELL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–845 C.

United States Court of Federal Claims.

Oct. 16, 1998.

Rose M. Cottrell, Oakland, Cal., pro se plaintiff.

Deborah P. Samuel, Washington, D.C., with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, Assistant Director Kathryn A. Bleecker, and Of Counsels Lt. Col. Terry L. Elling and Major Michael W. Meier, for defendant.

## ORDER

MOODY R. TIDWELL, III, Senior Judge.

This military pay case is before the court on defendant's motion to dismiss pursuant to RCFC 12(b)(1) and 12(b)(4) or, in the alternative, for judgment upon the administrative record pursuant to RCFC 56.1. Plaintiff, a commissioned officer in the Army, sued several of her superior officers and the United States, claiming defendant wrongfully prohibited her from graduating an officer training course thereby denying her promotion. Plaintiff alleges a variety of tort, discrimination, contract, and conspiracy claims as well as a host of statutory violations. Defendant seeks to dismiss plaintiff's claims primarily on jurisdictional grounds, arguing that plaintiff's claims are not within the purview of the Tucker Act and the statute of limitations has expired. For the reasons set forth below, the court allows defendant's motion to dismiss for lack of subject matter jurisdiction and, in part, for failure to state a claim upon which relief can be granted. Defendant's motion for judgment upon the administrative record is deemed moot.

## BACKGROUND

In 1989, plaintiff was a thirty-four-year-old commissioned officer, a second lieutenant by appointment, in the United States Army Adjutant General Corp. From June until September of 1989, plaintiff was enrolled in Adjutant General Officer Basic Course ("AGOBC" or "course"). In order to graduate from AGOBC, she needed to pass a land navigation test, pass a physical, qualify with her weapon, satisfactorily complete field training exercises, and maintain an average of seventy percent on course examinations.

It is well documented that plaintiff was failing the course, particularly the academic and land navigation requirements. Defendant counseled plaintiff regarding her course deficiencies on numerous occasions. In August 1989, defendant notified plaintiff she would not graduate because she had not completed all of the course requirements, and, in accordance with Army regulations, defendant recommended that plaintiff be eliminated

from AGOBC. Plaintiff requested that defendant stop the elimination proceedings and grant an administrative waiver so that, notwithstanding her course failures, plaintiff would pass AGOBC, graduate, and secure her promotion. Defendant denied plaintiff's request for administrative waiver; plaintiff contends defendant did so arbitrarily and discriminatingly as shown only by the fact that defendant granted waivers to other persons in plaintiff's class. Because plaintiff was unable to pass the course, she voluntarily resigned from AGOBC on September 5, 1989.

Throughout 1989 and 1990, plaintiff filed several complaints with various military personnel in which she protested the above actions and asserted claims of discrimination and unfair treatment. On October 19, 1989, plaintiff filed a complaint with the Inspector General pursuant to Article 138 of the Uniform Code of Military Justice. (Compl. Ex. M.) On October 31, 1989, plaintiff filed a complaint with the Commandant of the Adjutant General School and the Director of Personnel. (AR [1] at 45.) On May 28, 1990, and again on July 3, 1990, plaintiff filed complaints with the Army's equal opportunity offices in Illinois and Washington, D.C. (Compl. Ex. O, P.) On December 7, 1990, plaintiff submitted yet another appeal to the Commandant of the Adjutant General School. (AR at 77–78.) Defendant thoroughly investigated and responded to each and every one of these complaints. Plaintiff, however, was not satisfied with the results.

On March 26, 1991, plaintiff filed an application with the Army Board for Correction of Military Records ("ABCMR"). (Pl. Statement of Facts at 6.) The ABCMR rendered an adverse decision on April 20, 1994. (AR at 14–23; Compl. at 1.) It appears that plaintiff filed additional applications with the ABCMR on June 6, 1991, (Compl. Ex. R), and again on June 26, 1991, (AR at 35). Accompanying these applications were plaintiff's demand for settlement and a lengthy and detailed brief arguing the factual and legal merits of her claims. (Compl. Ex. R; AR at 36, 38–59.) In both of her applications

---

1. "AR" refers to the Administrative Record.

for correction, plaintiff states that the "date of discovery" of the "alleged error or injustice" was August 29, 1989. (Compl. Ex. R ¶ 11; AR at 35 ¶ 11.)

Plaintiff filed suit in this court on December 15, 1997. Plaintiff remains steadfast in her position that she should have been granted an administrative waiver and graduated from AGOBC notwithstanding her inability to complete the course requirements. She bitterly contends that defendant's refusal to grant her the waiver and automatically promote her is evidence of discrimination, tort, breach of contract, and conspiracy. Plaintiff seeks correction of her military record to reflect automatic promotion, front pay, back pay, punitive damages, and other relief this court deems proper.

## DISCUSSION

In her complaint, plaintiff pleads twelve counts against defendant, alleges numerous statutory violations, and asserts the following causes of action: race discrimination, age discrimination, intentional and negligent infliction of emotional distress, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, wrongful discharge, sexual harassment, and various conspiracy charges. For the reasons set forth below, however, all of plaintiff's claims are dismissed for lack of subject matter jurisdiction and, in part, for failure to state a claim upon which relief can be granted.

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

■■■■ In considering defendant's motion to dismiss for lack of subject matter jurisdiction, the court must construe the facts in the complaint in the light most favorable to plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and accept any undisputed allegations of fact as true, *see Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747–48 (Fed.Cir. 1988). When jurisdictional facts are challenged, however, the court need not accept plaintiff's framing of the complaint. *See Lewis v. United States*, 32 Fed.Cl. 301, 304

(1994), *aff'd*, 70 F.3d 597 (Fed.Cir.1995). "[T]he court should [then] look to plaintiff's factual allegations to ascertain the true nature of the claims" as well as "to matters outside the pleadings" in deciding whether or not it has jurisdiction. *Id.* It must be remembered, however, that plaintiff bears the ultimate burden of establishing subject matter jurisdiction over her claims. *See Reynolds*, 846 F.2d at 747; *Burgess v. United States*, 20 Cl.Ct. 701, 703 (1990).

#### A. Suits Against Individuals

■■■■ The Court of Federal Claims is a court of limited jurisdiction. *See Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir. 1997). The Tucker Act limits the court's jurisdiction to non-tort money suits against the United States founded either upon the Constitution, a federal statute or regulation, or upon an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (1994); *see New York Life Ins. Co. v. United States*, 118 F.3d 1553, 1555 (Fed.Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998). Not all suits against the United States fall within this court's jurisdiction; the subject matter of the claims must fall within narrow scope of the Tucker Act as defined above. *See Soriano v. United States*, 352 U.S. 270, 273, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Ashgar v. United States*, 23 Cl.Ct. 226, 230 (1991). Before analyzing the subject matter of plaintiff's claims, however, this court restates a fundamental principle of Tucker Act jurisdiction. The Court of Federal Claims does not have jurisdiction over suits against individuals; it only has jurisdiction over suits against the United States. *See United States v. Sherwood*, 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Brown*, 105 F.3d at 624; *Berdick v. United States*, 222 Ct.Cl. 94, 612 F.2d 533, 536 (Ct.Cl.1979). Claims against individuals, therefore, must be dismissed for lack of jurisdiction. *See Sherwood*, 312 U.S. at 588, 61 S.Ct. 767; *Brown*, 105 F.3d at 624; *Berdick*, 612 F.2d at 536.

■■■■ In this action, plaintiff names thirteen military officers and/or personnel [2] as defen-

---

2. The named defendants are: Togo West, COL

Frank C. Foster, COL Daugherty, COL Steve

dants. To the extent plaintiff is alleging claims against the individuals and not the United States, plaintiff's claims are dismissed. To the extent, however, plaintiff asserts claims against the United States based upon certain alleged conduct of its agents (i.e. various military personnel and the ABCMR), the claims remain the subject of the court's analysis below.

### B. Tort Claims

It is well settled that the Court of Federal Claims lacks jurisdiction over any and every kind of tort claim. *See Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir. 1997); *Berdick v. United States*, 222 Ct.Cl. 94, 612 F.2d 533, 536 (Ct.Cl.1979); *Pinkston v. United States*, 6 Cl.Ct. 263, 267 (1984); *see also McCauley v. United States*, 38 Fed.Cl. 250, 264 (1997) ("Jurisdiction to hear tort claims is exclusively granted to the United States District Courts under the Federal Tort Claims Act."), *aff'd*, 152 F.3d 948 (Fed. Cir.1998). For example, the Court of Federal Claims cannot hear claims for intentional or negligent infliction of emotional distress. *See Berdick*, 612 F.2d at 536; *Gates v. United States*, 33 Fed.Cl. 9, 12 (1995). The court does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties. *See McCauley*, 38 Fed.Cl. at 265. It does not have jurisdiction over harassment claims, *see Pinkston*, 6 Cl.Ct. at 267. or breach of duty claims, *see McCauley*, 38 Fed.Cl. at 265, or claims involving tortious interference with contractual relationships, *see Berdick*, 612 F.2d at 536; *Pinkston*, 6 Cl.Ct. at 267.[3] Even where the claim is framed under non-tort law, the court lacks jurisdiction if the essence of the claim lies in

tort. *See Brown*, 105 F.3d at 623 (refusing jurisdiction over tax assessment claim because underlying allegation was fraud). Finally, the Court of Federal Claims lacks jurisdiction over conspiracy claims because these, too, sound in tort. *See Berdick*, 612 F.2d at 536.

In the instant case, plaintiff alleges that defendant committed the following torts: intentional infliction of emotional distress, negligent infliction of emotional distress, breach of fiduciary duty, conspiracy to commit breach of fiduciary duty, conspiracy to commit race and age discrimination, and conspiracy to commit breach of implied covenant of good faith and fair dealing. In accordance with the law, as set forth above, these claims are dismissed for lack of jurisdiction.[4]

### C. Discrimination Claims

Jurisdiction in the United States Court of Federal Claims is also limited by Title VII and the Age Discrimination in Employment Act ("ADEA"), both of which grant exclusive jurisdiction over race, sex, and age discrimination claims to the United States District Courts. *See McCauley v. United States*, 38 Fed.Cl. 250, 265–66 (1997), *aff'd*, 152 F.3d 948 (Fed.Cir.1998); *Dixon v. United States*, 17 Cl.Ct. 73, 77 (1989). As courts have repeatedly held, there is no Tucker Act jurisdiction in the Court of Federal Claims to entertain claims involving race, sex, and age discrimination or other claims involving civil rights violations. *See Dixon*, 17 Cl.Ct. at 77; *see also McCauley*, 38 Fed.Cl. at 265–66 (no jurisdiction over race discrimination, sexual harassment, hostile work environment, or retaliation claims); *Jackson v. United States*,

---

Strippoli, COL Leon Blackwell, LTC Joseph Revel, CPT Kraak, CPT John Milner, CPT Stella M. Pitts, CPT Tony Fomerman, CPT Richard P. Gregory, Joan Loy, and a class of defendants known as "Does 1–100." (Compl. at 3–6.)

3. The Court of Federal Claims may have jurisdiction to hear a claim that the United States tortiously breached a contract, but only when the tort is so interconnected with the underlying contract that the claim is better characterized as contract rather that tort. *See L'Enfant Plaza Properties, Inc. v. United States*, 227 Ct.Cl. 1, 645 F.2d 886, 892 (Ct.Cl.1981). This rule of law, however, is wholly inapplicable here because

plaintiff did not have an existing contract with the United States. Absent a contract, the United States could not have committed a tortious breach of contract. Thus, plaintiff's tortious interference claims, here, squarely sound in tort.

4. Plaintiff also contends, throughout her complaint, that defendant falsely imprisoned her and committed fraud. *See, e.g.*, Compl. at 8, 15, 32. She does not, however, assert formal counts as to these torts. Nevertheless, to the extent plaintiff is stating claims against defendant, the court dismisses the claims for lack of jurisdiction.

10 Cl.Ct. 691, 694–95 (1986) (no jurisdiction over race, color, sex, or handicap discrimination claims).

Accordingly, plaintiff's claims of race discrimination, age discrimination, sexual harassment, and other violations of Title VII, ADEA, and civil rights laws are dismissed for lack of jurisdiction.

### D. Contract Claims

 Military personnel who assert contract claims in the Court of Federal Claims face a heavy burden in establishing jurisdiction. It is presumed that military employees are appointed and do not hold their positions via employment contracts; thus, military employees do not, as a matter of course, possess enforceable contract rights against the government. *See Kania v. United States,* 227 Ct.Cl. 458, 650 F.2d 264, 268 (Ct.Cl.1981) ("rights of [military employees] against the government do not turn on contract doctrines but are matters of legal status"); *Darden v. United States,* 18 Cl.Ct. 855, 859 (1989); *House v. United States,* 14 Cl.Ct. 32, 36 (1987). To rebut this presumption and prove jurisdiction, military employees must demonstrate that an explicit agreement with the United States exists, the agreement was executed by someone from the United States who possessed actual authority to bind the government in contract, and the agreement entitles the military employee to monetary relief. *See Kania,* 650 F.2d at 268; *Darden,* 18 Cl.Ct. at 859; *House,* 14 Cl.Ct. at 36.

Courts routinely reject arguments that the appointed job creates an implied employment contract which imposes contractual duties upon the United States and grants contractual rights to the military employee. *See Army and Air Force Exch. Serv. v. Sheehan,* 456 U.S. 728, 735, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982) (rejecting implied employment contract theory); *Kania,* 650 F.2d at 268 (contract must be "specifically spelled out"); *Darden,* 18 Cl.Ct. at 859. Courts also reject arguments that military policies, regulations, or procedures constitute express or implied contracts. *See Army and Air Force Exch. Serv.,* 456 U.S. at 739–40, 102 S.Ct. 2118; *House,* 14 Cl.Ct. at 36–37. Even when gov-

ernment officials "by act or word generate expectations in the persons they employ, and then disappoint them, [their actions] do not *ipso facto* create a contract liability." *Shaw v. United States,* 226 Ct.Cl. 240, 640 F.2d 1254, 1260 (Ct.Cl.1981). As the court has previously stated, "contract liability enforceable under the Tucker Act does not extend to every agreement, understanding, or compact entered into by the Government." *Berry v. United States,* 27 Fed.Cl. 96, 100 (1992). Hence, contract claims, such as those for wrongful discharge and failure to promote, fail in the absence of an explicit agreement to the contrary. *See Army and Air Force Exch. Serv.,* 456 U.S. at 741, 102 S.Ct. 2118; *Kania,* 650 F.2d at 268; *Darden,* 18 Cl.Ct. at 859; *House,* 14 Cl.Ct. at 36.

 Here, plaintiff has provided no evidence whatsoever that an employment contract existed. Rather, plaintiff argues solely that her position as a commissioned officer in the Army gave rise to implied contractual rights and imposed upon defendant certain implied contractual duties to, *inter alia,* grant her waivers, promote her, and graduate her from AGOBC. As a matter of law, however, plaintiff is incorrect. Absent an explicit contract, no such contract duties exist. *See Army and Air Force Exch. Serv.,* 456 U.S. at 741, 102 S.Ct. 2118; *Kania,* 650 F.2d at 268; *Darden,* 18 Cl.Ct. at 859; *House,* 14 Cl.Ct. at 36. Accordingly, the court dismisses plaintiff's contract claims for lack of jurisdiction, including those claims for wrongful discharge and breach of implied covenant of good faith and fair dealing.

### E. Constructive Discharge Claim

 Plaintiff also contends she was constructively discharged—or forced to resign—because defendant discriminated against her, refused her request for waiver, and refused to graduate and promote her. To the extent this claim is separate from plaintiff's discrimination, tort, and contract claims, it is also dismissed for lack of jurisdiction because plaintiff voluntarily resigned.

Our predecessor court, the Court of Claims, has expressly held that the court does not have jurisdiction in cases of volun-

tary resignation. *See Parker v. United States,* 230 Ct.Cl. 974, 976, 1982 WL 25291 (1982); *Clark v. United States,* 229 Ct.Cl. 570, 573, 1981 WL 22060 (1981). "[V]oluntariness is vitiated only when the resignation is submitted under duress brought on by Government action" and is measured by an objective standard. *Clark,* 229 Ct.Cl. at 573. Frustration with superiors and inability to obtain a promotion does not constitute duress, even when the claimant's frustration allegedly stems from perceived discrimination in the workplace. *See Parker,* 230 Ct.Cl. at 976; *Clark,* 229 Ct.Cl. at 573. The threat of imminent academic elimination, likewise, does not constitute duress and does not convert an otherwise voluntary resignation into an involuntary one. *See Griessenauer v. Dept. of Energy,* 754 F.2d 361, 364 (Fed.Cir. 1985) ("the fact that the petitioner was faced with the probability that the agency would remove him unless he resigned, did not make his resignation involuntary"); *Christie v. United States,* 207 Ct.Cl. 333, 518 F.2d 584, 587–88 (Ct.Cl.1975).

In the instant case, plaintiff voluntarily resigned on September 5, 1989. She did so because she was unable to obtain an administrative waiver or complete the course requirements and, as a result, plaintiff could not graduate from AGOBC. The record contains ample evidence that plaintiff was angry and frustrated at not graduating, but it contains no evidence whatsoever that plaintiff resigned under duress.

For example, the record shows that, at the time she resigned, plaintiff was unhappy with the school, her superior officers, and her classmates. Plaintiff's unhappiness is reflected in repeated acerbic comments and disrespectful remarks. *See e.g.,* Compl. Ex. K (discussing classmates and stating "nor did I ride the 'sick, lame, and lazy wagon' as some of the other officers that will be graduating with waivers for pregnancy, medical, and other 'unknown' illnesses"); Compl. at 8, 10, 14, 18 (describing work environment as "opprobrious"). Plaintiff also blamed her course failures, at least in part, on the alleged inability of her superior officers to train and lead the class. *See, e.g.,* Compl. at 8–10 (contending defendants provided "draconian instruction methods [that] were woefully inadequate" and this "lackadaisical instruction" led to an "opprobrious malady" ). Plaintiff's frustration and bitterness is nowhere more evident than in her December 7, 1990, appeal to the Commandant of the Adjutant General School. In this appeal, plaintiff states:

> I was literally appalled at the lack of professionalism and planning by the OBC officers. I was disenchanted because, as a former enlisted soldier, I saw better military bearing, organization, guidance, and professionalism among the non-commissioned officers.... It is apparent why the U.S. Army is unable to retain highly educated, professional, and competent officers in light of the lack of leadership skills of its higher-ranking officers. Because of my high level of training in private universities and corporate law firms, it was difficult for me to lower my personal, professional, and educational standards at AGOBC in order to fit in with the norm.... I was not challenged or impressed with the *modus operandi* and low standards set by the course director and instructional staff.

AR at 77–78.

These types of statements show that plaintiff was dissatisfied, disgruntled, annoyed, and even insulted by defendant's refusal to graduate her from AGOBC. The statements do not, however, demonstrate that defendant exerted duress or coerced plaintiff to resign. Even though plaintiff perceives she was discriminated against, she falls far short of demonstrating duress. As a matter of law, therefore, the voluntariness of plaintiff's resignation stands, and plaintiff's claims for constructive discharge fail for lack of jurisdiction.

**F. Statutory Issues & the Tucker Act**

Plaintiff lists a variety of statutes[5] as a basis for jurisdiction: 5 U.S.C. §§ 701–06

---

5. Plaintiff also cites to two regulations, 32 CFR § 581.3 (1997) and SSC Regulation 350–11, as a basis for jurisdiction. The first regulation provides administrative review procedures for the ABCMR. The second grants the military discretion to authorize administrative waivers.

(Administrative Procedures Act); 10 U.S.C. § 106 (statute does not exist); 10 U.S.C. §§ 270, 277 (repealed 1994); 10 U.S.C. § 511 (later renumbered as 10 U.S.C. § 12103 which governs terms of enlisted personnel in the reserves); 10 U.S.C. § 1552 (correction of military record); 10 U.S.C. §§ 1161–77 (separation and dismissal of military personnel); 10 U.S.C. §§ 1661, 1669 (statutes do not exist); 28 U.S.C. § 1491 (Tucker Act); 29 U.S.C. § 621 (congressional statement of findings and purpose); 29 U.S.C. § 623 (prohibits age discrimination); 37 U.S.C. § 204 (Military Pay Act); and 42 U.S.C. §§ 1981, 1982, 1985, 2000(e) (anti-discrimination statutes). The court, in turn, discusses each statute below.

### 1. Tucker Act: Money Mandating Requirement

■ The cornerstone of this court's jurisdiction is the Tucker Act's money-mandating requirement. *See United States v. King*, 395 U.S. 1, 2–3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (Ct.Cl.1967). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States." *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see Eastport Steamship Corp.*, 372 F.2d at 1007. Merely requesting money damages, however, does not satisfy the money-mandating criterion; there must be a statute, regulation, or contract that specifically allows the monetary relief plaintiff requests. *See New York Life Ins. Co. v. United States*, 118 F.3d 1553, 1556 (Fed.Cir. 1997), *cert. denied*, — U.S. —, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *Eastport Steamship Corp.*, 372 F.2d at 1008–09. Additionally, the specific authority granting money relief must be distinct from Tucker Act itself. *See Mobin v. United States*, 22 Cl.Ct. 331, 333–34 (1991) ("basis for jurisdic-

tion must be a regulation, contract, or statute distinct from Tucker Act"); *see also United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (Tucker Act alone "does not create any substantive right enforceable against the United States for money damages"). In summary, plaintiff "must demonstrate that the source of substantive law [s]he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Mitchell*, 463 U.S. at 216–17, 103 S.Ct. 2961 (quoting *Testan*, 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport Steamship Corp.*, 372 F.2d at 1009)). Many of the statutes plaintiff cites above, however, do not satisfy the money-mandating requirement that is this court's jurisdictional hook.

Clearly, the Tucker Act, alone, does not mandate money. *See Mitchell*, 463 U.S. at 216, 103 S.Ct. 2961; *Testan*, 424 U.S. at 398, 96 S.Ct. 948. Likewise, the Administrative Procedures Act does not provide money relief. *See Mitchell v. United States*, 26 Cl.Ct. 1329, 1333 (1992), *aff'd*, 1 F.3d 1252 (Fed.Cir. 1993); *Ashgar v. United States*, 23 Cl.Ct. 226, 230 (1991). Neither 10 U.S.C. §§ 1161–77 (limiting dismissal of military personnel) nor 10 U.S.C. § 12103 (setting forth time periods that military personnel serve in the reserves) provide plaintiff in this case with money relief.[6] The same is true of 10 U.S.C. § 106; 10 U.S.C. §§ 270, 277; and 10 U.S.C. §§ 1661, 1669 because these statutes either do not exist or have been repealed. Finally, 29 U.S.C. § 621 is not money-mandating because it is merely a statement of congressional purpose. Therefore, none of these statutes can provide the basis for jurisdiction.

■ Other statutes may provide compensation; however, this feature alone does not provide jurisdiction over plaintiff's claims. Once again, this court restates the Tucker Act jurisdictional requirements: (1) plaintiff's claims must be asserted against the United States and not an individual; (2) the claims

---

Neither regulation, however, mandates money payment to plaintiff, so neither can confer jurisdiction to this court.

**6.** To the extent that some provisions of 10 U.S.C. §§ 1161–77 are money-mandating, those provisions are wholly inapplicable to the facts of this

case, and plaintiff fails to state a claim upon which relief can be granted thereunder. The court, therefore, dismisses such claims pursuant to RCFC 12(b)(4). In addition, 10 U.S.C. §§ 1162–63 have been repealed.

cannot be based in tort; (3) the claims must be for money damages as allowed by a money mandating statute or regulation distinct from the Tucker Act itself; and (4) the substantive law upon which plaintiff asserts relief must constitute a violation of the United States Constitution, federal law or regulation, or contract (express or implied-in-fact) with the United States. *See* 28 U.S.C. § 1491 (1994); *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555 (Fed.Cir. 1997), *cert. denied,* ––– U.S. –––, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998). Additionally, Congress must not have granted exclusive jurisdiction to another court, thus precluding the Court of Federal Claims from resolving the dispute. *See, e.g., McCauley v. United States,* 38 Fed.Cl. 250, 264 (1997), *aff'd,* 152 F.3d 948 (Fed.Cir.1998). Each one of these five requirements must exist. If any one prong fails, the court must dismiss the claim for lack of jurisdiction. With this in mind, the court notes that the following statutes present issues unique to this case.

### 2. Anti–Discrimination Statutes

Plaintiff asserts violations of the anti-discrimination statutes 29 U.S.C. § 623 and 42 U.S.C. §§ 1981, 1982, 1985, and 2000(e). As previously stated, Congress delegated exclusive jurisdiction to the United States District Courts to resolve plaintiff's discrimination claims. Consequently, it is irrelevant whether the anti-discrimination statutes cited above provide a mechanism for money relief. Money relief meets only one prong of the Tucker Act requirements. This court lacks jurisdiction over plaintiff's discrimination claims on other grounds.

### 3. Military Pay Act

The Military Pay Act, 37 U.S.C. § 204, "provides the basic entitlement to pay for commissioned officers in the armed services. The statute confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from service." *Sanders v. United States,* 219 Ct.Cl. 285, 594

F.2d 804, 810 (Ct.Cl.1979). It is true that this statute mandates money, but it does so only in cases of involuntary discharge or wrongful termination. *See Adkins v. United States,* 68 F.3d 1317, 1321 (Fed.Cir.1996) (no jurisdiction in case of voluntary resignation); *Sammt v. United States,* 780 F.2d 31, 32 (Fed.Cir.1985). As stated above, plaintiff voluntarily resigned and was not wrongfully discharged. Therefore, as to plaintiff, the statute does not bestow its money-mandating characteristics. Because the statute fails the money-mandating prong of the jurisdictional test, 37 U.S.C. § 204 cannot provide the basis for jurisdiction in this case.[7]

### 4. The Administrative Procedures Act

The Administrative Procedures Act, 5 U.S.C. §§ 701–06, grants the court power to review agency decisions and reverse those decisions if the agency acted arbitrarily and capriciously. *See* 5 U.S.C. § 706 (1994). This power of review, plaintiff argues, creates jurisdiction regardless of the Tucker Act requirements. The court disagrees. The Administrative Procedures Act is not a jurisdictional statute. *See Califano v. Sanders,* 430 U.S. 99, 106–07, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (act does not afford either an express or implied grant of subject matter jurisdiction); *Ashgar v. United States,* 23 Cl.Ct. 226, 231 (1991) ("the APA is not an independent source of jurisdiction for any court"); *Mobin v. United States,* 22 Cl.Ct. 331, 334–35 (1991). The act does not grant jurisdiction to review agency actions; it merely sets forth the standard of review. *See Califano v. Sanders,* 430 U.S. at 106–07, 97 S.Ct. 980; *Ashgar,* 23 Cl.Ct. at 231 ("there is no generalized authority for this Court to review agency actions"). Therefore, the court cannot review agency decisions unless plaintiff, as a condition precedent to her request for judicial review, establishes jurisdiction over the claims. As the court has analyzed throughout this order, plaintiff falls far short of establishing jurisdiction under the Tucker Act. Accordingly, the court cannot

---

7. Because plaintiff voluntarily resigned, 37 U.S.C. § 204 is inapplicable to this case, and plaintiff fails to state a claim upon which relief can be granted under this statute. Thus, in addi-

tion to dismissing for lack of jurisdiction, the court also dismisses plaintiff's claims pursuant to RCFC 12(b)(4).

invoke the Administrative Procedures Act power of review in this case.

### 5. Correcting Military Records Under 10 U.S.C. § 1552

 In most instances, the Court of Federal Claims has jurisdiction under the Tucker Act to consider claims under 10 U.S.C. § 1552. *See Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 812 (Ct.Cl.1979). In accordance therewith, the court has the power to review decisions of the ABCMR and to correct an "error" or "injustice" when such correction provides money relief. *See id.; Crispino v. United States*, 3 Cl.Ct. 306, 312 (1983). The court applies the arbitrary and capricious standard to determine whether error or injustice occurred. *See Crispino*, 3 Cl.Ct. at 312. For the court to engage in 10 U.S.C. § 1552 analysis, however, plaintiff must state a claim for relief thereunder. *See Dehne v. United States*, 970 F.2d 890, 894 (Fed.Cir.1992) (assuming jurisdiction but dismissing under RCFC 12(b)(4)).

 Here, however, plaintiff's claims of error or injustice, arbitrariness, and capriciousness, stem from jurisdictionally unsound theories: tort, discrimination, and contract implied from status. Since the court lacks jurisdiction over such claims, it cannot assess whether plaintiff's allegations give rise to error or injustice or constitute arbitrary or capricious acts. In other words, the court is without power to provide plaintiff relief. Therefore, while its true that the court could have jurisdiction under 10 U.S.C. § 1552 in most cases, it does not have jurisdiction in this particular case. The court will not allow plaintiff to repackage jurisdictionally unsound claims into a more appealing package by wrapping it in a 10 U.S.C. § 1552 blanket. Thus, the court dismisses plaintiff's claims for lack of jurisdiction and, to the extent required, for failure to state a claim upon which relief can be granted.

### G. Statute of Limitations

 The statute of limitations is a jurisdictional statute; it must be strictly construed and cannot be waived. *See Berry v. United States*, 27 Fed.Cl. 96, 101 (1992) (citing *Farrell v. United States*, 9 Cl.Ct. 757,

758–59 (1986)). In this case, the statute of limitations is dictated by 28 U.S.C. § 2501 which states that plaintiff must file suit within six years of the date when her claims first accrued. *See* 28 U.S.C. § 2501 (1994). A claim first accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir.1988). It is clear, however, that "plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed.Cir.1995); *see Hopland Band of Pomo Indians*, 855 F.2d at 1577 ("it is not necessary that the plaintiff obtain a complete understanding of all the facts" before statute begins to run); *Japanese War Notes Claimants Assoc. v. United States*, 178 Ct.Cl. 630, 373 F.2d 356, 359 (Ct.Cl.1967) (claims need not be substantiated by discovery of evidence before statute can begin to run). For the statute to run, plaintiff need only be aware of sufficient facts to know she has been wronged. *See Hopland Band of Pomo Indians*, 855 F.2d at 1577; *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed.Cir. 1985); *Japanese War Notes Claimants Assoc.*, 373 F.2d at 359. "Once plaintiff is on inquiry that it has a potential claim, the statute can start to run." *Japanese War Notes Claimants Assoc.*, 373 F.2d at 359.

 In certain limited circumstances, the statute of limitations is tolled. For tolling to occur, however, "[p]laintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Japanese War Notes Claimants Assoc.*, 373 F.2d at 359; *see Urie v. Thompson*, 337 U.S. 163, 169–70, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Welcker*, 752 F.2d at 1580. The statute is not tolled by plaintiff's pursuit of optional administrative remedies. *See Mitchell v. United States*, 26 Cl.Ct. 1329, 1331 (1992), *aff'd*, 1 F.3d 1252 (Fed.Cir.1993). This means that the six-year clock continues to run during the period when an application is pending before the ABCMR. *See Hurick*

*v. Lehman,* 782 F.2d 984, 987 (Fed.Cir.1986); *Mitchell,* 26 Cl.Ct. at 1331 ("Resort to a correction board is permissive, not mandatory, and therefore does not toll the running of the statute of limitations.").

In the instant case, plaintiff alleges twelve counts against defendant. Each count stems from allegations that defendant failed to promote and graduate her. These facts were known to plaintiff as early as August 29, 1989. Moreover, plaintiff designated this very date as the "date of discovery" of the "alleged error or injustice" in her ABCMR applications for correction. *See* Compl. Ex. R ¶ 11; AR at 35 ¶ 11 (plaintiff's June 6, 1991, and June 26, 1991, appeals to ABCMR). In all likelihood, plaintiff possessed sufficient facts by August 29, 1989, to trigger the statute of limitations even if she had not yet fully investigated the legal nature of her claims. *See Hopland Band of Pomo Indians,* 855 F.2d at 1577; *Welcker,* 752 F.2d at 1580; *Japanese War Notes Claimants Assoc.,* 373 F.2d at 359.

As time passed, plaintiff continued to demonstrate a thorough and detailed understanding of both the factual and, although not necessary, legal nature of her claims. In various letters or formal complaints throughout 1989, 1990, and 1991, plaintiff repeatedly complained to the Army of the very practices giving rise to the claims she now files with this court. *See, e.g.,* AR at 62–65 (letter from Rose Cottrell dated April 30, 1991); AR at 77–78 (letter and appeal from Rose Cottrell dated December 7, 1990); Compl. Ex. O, P (petitions to equal opportunity office on May 28, 1990, and equal opportunity division on July 3, 1990); Compl. Ex. M (Art. 138 complaint of wrong dated October 19, 1989). Here, too, the court could conclude that the statute of limitations began to run on any one of these dates.

Continuing along the timeline, on June 26, 1991, plaintiff rendered a detailed legal analysis of her claims along with her appeal to the ABCMR, and she provided several pages of factual allegations to support her claims. *See* AR 35, 38–59. Without question, plaintiff knew by this late date of sufficient facts giving rise to her claims; the statute of limitations cannot be ignored. Viewing the evidence in the light most favorable to plaintiff, the court concludes that the statute of limitations began to run no later than June 26, 1991. Plaintiff had six years, or until June 26, 1997, to file suit in this court. Plaintiff, however, did not file suit until December 15, 1997. The statute of limitations had expired by this time.

Plaintiff offers two arguments in favor of tolling the statute of limitations: (1) the suit was timely filed because plaintiff discovered new evidence; and (2) plaintiff's appeal to the ABCMR tolled the statute of limitations. The court, however, rejects both arguments for the reasons stated below.

First, to the extent plaintiff has uncovered additional facts in this case *vis-a-vis* newly discovered evidence, the facts merely add fuel to the claims plaintiff already knew existed. Plaintiff need not complete her investigation of her claims, or even become fully aware of all of the facts giving rise to claims, before the statute of limitations begins to run. *See Fallini,* 56 F.3d at 1380; *Japanese War Notes Claimants Assoc.,* 373 F.2d at 359. It is enough that plaintiff possessed sufficient facts to know that a wrong occurred. *See Hopland Band of Pomo Indians,* 855 F.2d at 1577; *Welcker,* 752 F.2d at 1580; *Japanese War Notes Claimants Assoc.,* 373 F.2d at 359. Additionally, plaintiff presents no evidence whatsoever that defendant deliberately concealed evidence, or that the so-called newly discovered evidence was inherently unknowable, or that plaintiff was unaware that a wrong had occurred. Therefore, tolling principles do not apply. *See Japanese War Notes Claimants,* 373 F.2d at 359; *see also Hopland Band of Pomo Indians,* 855 F.2d at 1577; *Welcker,* 752 F.2d at 1580.

Second, plaintiff's appeal to the ABCMR was clearly permissive and not mandatory and, therefore, as a matter of law, does not toll the statute of limitations. *See Mitchell,* 26 Cl.Ct. at 1331. The same is true of plaintiff's numerous letters to various Army personnel requesting relief because these also constitute permissive acts. *See id.* Furthermore, the Army's continued refusal to grant plaintiff the desired relief does not give rise to separate or new causes of action. *See*

*Hurick,* 782 F.2d at 987; *Mitchell,* 26 Cl.Ct. at 1331; *see also Berry v. United States,* 27 Fed.Cl. 96, 102 (1992) ("Plaintiff's disappointment with the outcome of these proceedings does not create jurisdiction in this Court."). In summary, the statutory clock continued to tick even during plaintiff's formal and informal permissive appeals, and thus, it expired on June 26, 1997. Accordingly, plaintiff is now jurisdictionally precluded from bringing suit.

### CONCLUSION

For the reasons set forth above, the court dismisses plaintiff's claims for lack of subject matter jurisdiction and, to the extent necessary, for failure to state a claim upon which relief can be granted. The court does not reach defendant's motion for judgment on the administrative record as this motion is moot. In light of the court's order, plaintiff's cross motion for summary judgment is denied. Briefing is not deemed necessary.

**IT IS SO ORDERED.**