**Betty Ann NEWBY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 98–857C.

United States Court of Federal Claims.

July 16, 2003.

Betty Ann Newby, Borger, TX, pro se.

Jan M. Folena, Commercial Litigation Branch; Robert E. Kirschman, Assistant Director; David M. Cohen, Director, Commercial Litigation Branch, Civil Division; Robert D. McCallum, Jr., Assistant Attorney General, United States Department of Justice, Washington, DC, for the defendant.

Kenneth L. Roland, United States Department of Housing and Urban Development, Denver, CO, of counsel.

## OPINION

HORN, Judge.

The plaintiff, an attorney appearing *pro se*, filed a complaint seeking to be reinstated as the owner of real property and improvements foreclosed on by the Department of Housing and Urban Development (HUD) on January 3, 1995. The defendant filed a motion to dismiss the plaintiff's complaint, or, in the alternative, for summary judgment. Subsequently, the defendant withdrew its motion for summary judgment. The defendant maintains its motion to dismiss the complaint for lack of jurisdiction over the subject matter, which the court addresses below.

## FINDINGS OF FACT

According to the complaint, the plaintiff's mother, the late Mildred Newby,[1] purchased the real property and improvements located at 601 Coble in Borger, Texas (Borger Property) in 1983. On February 2, 1983, the plaintiff's mother executed a deed of trust on the Borger Property with Richard E. Hulbirt for the benefit of the Gulf Coast Investment Corporation (Gulf) in the amount of $29,000.00. The deed recites that Gulf's loan to the plaintiff's mother would be charged interest at the rate of twelve percent per year and would be repayable to Gulf at the rate of $319.58 per month over a term of twenty years.

The complaint states that the plaintiff's mother's income at the time Mildred Newby purchased the Borger Property consisted of pension payments from her late husband's former employer, Getty Oil Company, in addition to a Social Security allowance of approximately $500.00 per month. The plaintiff claims that a "short time" after the plaintiff's

---

1. Mildred Newby died in 1991.

mother purchased the Borger property, "Getty Oil company sent a surprise letter to Mildred Newby telling her that her pension ended in 1983 and was not for her lifetime." The parties agree that as a result of financial difficulties, the plaintiff's mother fell behind on her mortgage payments to Gulf shortly after executing the deed of trust.

On August 16, 1985, HUD acquired the deed of trust on the Borger property from Gulf. The instrument assigning the deed of trust to HUD indicates that at the time of the assignment, the plaintiff's mother owed $28,523.87 in outstanding principal on the original loan of $29,000.00. In January, 1986, the plaintiff's mother entered into a six-month "Forbearance Agreement" with HUD, which provided as follows:

In return for the Department of Housing and Urban Development (HUD) not foreclosing on my mortgage which is now in default under the original note, I agree to the following terms and conditions:

1. Beginning January 1, 1986 and continuing through June 30, 1986 on the first day of each month I will submit to HUD ... a check or money order in the amount of $50.00. This amount will be applied to the delinquency on the loan referenced above.

\* \* \* \* \* \*

4. If the loan is brought current prior to expiration of this Agreement, the Agreement will terminate and the monthly payment set forth in the note or mortgage, adjusted to reflect current escrow requirements, will resume ....

5. This Agreement will automatically terminate if I cease to occupy the property, transfer ownership of the property, or assign or transfer any interest or liability under the note or mortgage to a third party ....

6. All provisions of the note and mortgage, except as modified herein, shall remain in full force and effect. Upon any

breach of the terms of this Agreement, HUD may terminate this Agreement and institute foreclosure proceedings. But so long as I comply in a timely fashion with the above conditions, HUD will hold my loan in default and will not initiate foreclosure.

7. If the loan has not been brought current prior to expiration of this Agreement, I agree to enter into another forbearance agreement with HUD.

The plaintiff's mother entered into a second, identical forbearance agreement with HUD in August, 1986 for a term covering the six-month period from July through December of 1986. In December, 1986, the plaintiff's mother again renewed the forbearance agreement with HUD for a term of six months. This third, and final, forbearance agreement was identical to the two earlier agreements, except that the plaintiff's mother's monthly payment under the third agreement was increased from $50.00 to $125.00.[2]

On October 23, 1987, the plaintiff's mother sold the Borger Property, including the outstanding mortgage under the deed of trust, to her daughter, the plaintiff, Betty Ann Newby. The October 23, 1987 warranty deed recording the conveyance of the Borger Property recites that the plaintiff's mother transferred the land and improvements to the plaintiff in return for the plaintiff's "assumption and agreement to pay ... all of the unpaid balance due and owing on a certain indebtedness against [the Borger Property] according to the terms thereof of one certain Deed of Trust Note dated 2–2–83, payable to the order of Gulf Coast Investment Corporation ...."

The plaintiff states that "[i]n late 1987 the plaintiff paid HUD approximately $13,000 in past due payments and interest for her mother." An annual loan statement dated December 31, 1987 indicates that HUD recorded two large payments on the plaintiff's mortgage in November and December of 1987

2. The plaintiff appears to have misunderstood both the duration of the forbearance agreements and the amount of payment due each month under the third agreement. The plaintiff states, both in her complaint and in a declaration appended to her July 9, 1999 filing with this court,

that the forbearance agreement between HUD and the plaintiff's mother was for a term of five years. In her declaration, the plaintiff also states that HUD "accepted $50 per month for the next five years in lieu of the $350 monthly payments."

totaling $12,600.00. The defendant acknowledges that the November and December, 1987 payments satisfied the full amount of Mrs. Mildred Newby's delinquency, plus interest, as of December, 1987.

Shortly after assuming her mother's indebtedness, however, the plaintiff began to miss mortgage payments. In time, the plaintiff's failure to make timely payments became habitual, as the plaintiff herself admits in her complaint:

> Between 1987 when plaintiff purchased the subject property from her Mother by assignment from HUD and 1995 when a new office manager in the Lubbock HUD office, Donna Browning and her husband, changed the twelve year old relationship of trust and confidence and foreclosed on the deed of trust after accelerating the note, HUD threatened foreclosure on at least eight or nine different occasions. Its agents always allowed plaintiff to pay the arrears, and other charges set by HUD and reinstated plaintiff. On several occasions, HUD allowed plaintiff to make payments every 6–10 months rather than monthly. HUD always accepted the late payments and penalties even when several months were paid at one time.

The defendant describes the same situation somewhat differently: "Ms. Newby only made payments to HUD under threat of foreclosure, at which time she paid the amount necessary to avoid foreclosure." The record contains seventeen separate notices of default on the Borger Property mortgage addressed to the plaintiff from HUD. The earliest notices, from 1988 and 1989, warned:

> According to our records, your mortgage is *seriously* delinquent. In the event this delinquency is not cleared *immediately,* legal action may be instituted which will result in the loss of your home. This foreclosure would also have a detrimental effect on your current credit rating, which would prevent you from acquiring future loans.

(Emphasis in original.) HUD nearly executed on its foreclosure notice on July 9, 1991,

when H.E. Whitney, Manager of HUD's Lubbock office, informed the plaintiff that "Glenn Lowe, Substitute Trustee for the benefit of the lawful owner and holder of the note secured by the said Deed of Trust, will sell the [Borger Property] at public sale at the Courthouse door of Hutchinson County, Texas, on Tuesday, August 6, 1991 .... " The plaintiff, however, appears to have made a mortgage payment in time to prevent foreclosure. The 1991 annual loan statement on the Borger Property mortgage indicates that HUD received a $4,495.00 payment on July 29, 1991, which appears to have been sufficient to bring the loan current. The plaintiff's loan, however, was not to remain current. On November 7, 1991, HUD wrote to inform the plaintiff that her mortgage payments were again delinquent and that the plaintiff again faced the risk of foreclosure on her home. The annual loan statement for 1991 indicates that HUD received a payment on the plaintiff's mortgage in the amount of $1,571.93 on December 10, 1991.

On September 10, 1992, HUD wrote to inform the plaintiff that her mortgage was once again in default and that foreclosure proceedings had once again been commenced:

> Your account is in the early stages of initiating foreclosure action. Because the account has already been in foreclosure and reinstated in the past two years,[3] we will *not* allow reinstatement **once the Notice of Intent to Foreclose (NOI) is sent.**
>
> Your account is eight (8) months delinquent, totaling $3,231.71. We must receive this amount in *certified funds* delivered to our Lubbock office before the close of business September 18, 1992. If we do not receive this amount, an NOI will be sent and the mortgage accelerated. You will then have to pay the *entire* loan in full under the terms of the Deed of Trust Note or lose your home.

(Emphasis in original.) Again, it appears that the plaintiff paid HUD in time to prevent foreclosure. The annual loan statement

---

3. HUD apparently was referring to the foreclosure proceedings mentioned in HUD's July 9, 1991 letter to the plaintiff, discussed above.

for 1992 reflects a payment received October 2, 1992 in the amount of $3,231.40.

On March 22, 1993, HUD sent the plaintiff a "Notice of Intention to Foreclose and Accelerate Mortgage Balance and to Report to Credit Bureau," which stated that:

> The minimum amount of money that you will have to pay to prevent foreclosure at this time is *$2125.01*. If we do not receive this money by *March 31, 1993*, you will also need to include an additional monthly payment along with any filing fees incurred by HUD . . . .
>
> \*    \*    \*    \*    \*    \*
>
> If you do not pay the amount specified [above] WITHIN 30 DAYS from the date of this letter or tender a deed-in-lieu of foreclosure ... we will accelerate the mortgage obligation (declare the entire mortgage due and payable immediately). We will do this without further demand and instruct our attorney to start foreclosure proceedings.

(Emphasis in original.) The annual loan statements reflect that HUD received a payment on April 14, 1993 sufficient to satisfy the March 22, 1993 Notice of Intent to Foreclose. Identical Notices of Intent to Foreclose were sent to the plaintiff on July 21, 1993 and September 14, 1994. The annual loan statements indicate that the plaintiff made her next, and last, payment on May 26, 1994.

The plaintiff states that, "[i]n December of 1994, HUD sent the plaintiff a notice of intent to foreclose as it had done on numerous past occasions." It appears from the record, however, that on December 7, 1994, R. Leon Pope, of Pope & Associates, P.C., sent the plaintiff an "Acceleration Letter and Foreclosure Notice" by certified mail. Unlike the Notices of Intent to Foreclose which HUD had sent on at least three previous occasions, the December 7, 1994 Acceleration Letter announced that HUD had in fact accelerated the mortgage note on the Borger Property and that foreclosure would ensue if plaintiff failed to pay the entire amount remaining on the note:

> Our client, the Secretary of Housing and Urban Development, is the current Owner

and Holder of the Note. The Note is secured by the property (the "Property") described in the Deed of Trust.

> According to the records of Holder, Borrower has failed to pay the amount due on the Note despite notice to Borrower of the default as required by the Deed of Trust and applicable law. As a result, Holder hereby accelerates the maturity of the Note and declares the entire balance of the Note due and payable.
>
> Demand is hereby made on Borrower and all persons obligated on the Note for the full outstanding principal balance of the Note, plus accrued interest, late charges and any other amounts owing under the Note or secured by the Deed of Trust . . . .
>
> If the amounts owed are not paid, Holder will have the Property sold pursuant to the terms of the Deed of Trust. This sale shall be conducted as required by law and the Deed of Trust . . . .

The Acceleration Letter stated that the property would be sold on January 3, 1995 at 1:00 p.m., or within three hours thereafter, if the plaintiff had not satisfied the balance of the loan by that time.

The plaintiff claims that after she received the December 7, 1994 Acceleration Letter, she contacted the Lubbock HUD office and was informed that she could prevent foreclosure by paying $3,092.99 to bring her loan current. According to the complaint, the plaintiff attempted to hand-deliver the $3,092.99 to the HUD office in Lubbock, Texas on December 30, 1994, but was prevented from making a timely delivery before the office closed, allegedly, by inclement weather and an automobile breakdown. The plaintiff asserts that when she finally spoke to HUD officials on the morning of January 3, 1995, the HUD officials "refused to accept payments even if the plaintiff arrived in Lubbock," and gave the plaintiff the name of the substitute trustee. The plaintiff states that when she tried to contact the substitute trustee, employees in the substitute trustee's office "refused to give the petitioner [plaintiff] the name of its Substitute Trustee who would actually conduct the foreclosure sale."

The plaintiff recounts the ensuing sequence of events as follows: Around 1:00

p.m. on January 3, 1995, moments before the foreclosure sale of the Borger Property commenced at the door of the Hutchinson County Courthouse, the plaintiff appeared before Judge John Lagrone of the District Court of Hutchinson County, Texas, seeking a temporary restraining order enjoining the foreclosure. Judge Lagrone signed the temporary restraining order on January 3, 1995 at 12:50 p.m., a bare ten minutes before the 1:00 p.m. foreclosure deadline announced in the Acceleration Letter sent to the plaintiff by R. Leon Pope on December 7, 1994. The plaintiff alleges that the temporary restraining order failed to prevent the foreclosure because "the Substitute trustee conducted the fore closure [sic] sale seven minutes early . . . ."

On February 1, 1995, the plaintiff filed suit against R. Leon Pope[4] in the Hutchinson County District Court seeking an injunction preventing the defendants in that suit "from directly or indirectly forcing Plaintiff from the subject property or from attempting to sell the property as part of H.U.D.'s inventory and otherwise treating the property as if it were the property of H.U.D." On May 23, 1995, Doug Booth[5] sent the plaintiff a proposed "Compromise, Release, and Settlement Agreement." Relevant sections of the proposed settlement agreement provided as follows:

### III. RELEASE

NEWBY has this day released and by these presents does hereby release, acquit, and forever discharge HUD, POPE, P & A AND BROWNING, their agents, servants, employees, legal counsel and all persons, natural or corporate, in privity with them or any of them, from any and all claims or causes of action of any kind whatsoever, whether in equity, at common law, statutory, contractual or otherwise . . . directly or indirectly attributable to the above-described transaction or any other transac-

tion that NEWBY and HUD, POPE, P & A and/or BROWNING have entered into up to the date of this *Agreement,* it being intended by NEWBY to release all claims of any kind which NEWBY might have against those hereby released, whether asserted by NEWBY or not.

\*      \*      \*      \*      \*      \*

### V.  PAYMENT OF AMOUNTS PURSUANT TO NOTE

*5.02. Payment to Bring Current.* NEWBY shall pay to HUD at HUD's notice address as provided below, on or before June 15, 1995, the amount of $6,364.99 which shall be in the form of a certified check.

*5.03. Cure of Default.* NEWBY and HUD agree that, if NEWBY tenders payment to HUD as contemplated in paragraph 5.02 of this *Agreement,* NEWBY shall be current in the payment of amounts due to the holder of the Note as of June 1, 1995.

### VI.  RESCISSION OF FORECLOSURE

If, on June 15, 1995, NEWBY has fulfilled all obligations under this *Agreement* which are due up to such date, within ten (10) days after such date, HUD shall rescind the Foreclosure Sale and shall file a sworn statement in the Real Property Records of Hutchinson County, Texas which provides that HUD has rescinded the Foreclosure Sale . . . .

### VII.  AGREEMENT TO VACATE IN CASE OF DEFAULT

In the event that NEWBY fails to fulfill any of her obligations under this *Agreement,* NEWBY shall vacate the Property on or before June 30, 1995 without the necessity of further notice from HUD.

---

4.  Mr. Pope is named in the Hutchinson County District Court complaint as "Substitute Trustee for the Secretary of Housing & Urban Development of Washington, D.C." Other named defendants in the Texas District Court were Pope & Associates, P.C., and Donna Browning, a Lubbock, Texas HUD official. .

5.  Mr. Booth is identified in the proposed settlement documents as "Attorney[ ] for HUD, P & A [Pope & Associates, P.C.], POPE and BROWNING."

(Emphasis in original.) Included with the May 23, 1995 proposed settlement agreement were a proposed "Joint Motion to Dismiss" and an "Agreed Order of Dismissal."

In a letter to Doug Booth dated May 30, 1995, the plaintiff indicated her acceptance of the terms of the proposed agreement:

> I found your letter with the proposed instruments at 601 Coble on Saturday, 5–27–95. I was not able to send them back by overnight courier because of Memorial Day and the weekend.

> I accept your terms and agree to pay the $6,364.99 by June 15, 1995. I will send the signed papers back to you by return mail.

According to the defendant, "Ms. Newby, however, failed to return the order of dismissal, pay the money or vacate the property." The plaintiff has acknowledged to this court that "she was not able to pay HUD the amount Booth claimed by June 15, 1995." However, the plaintiff also states in her response to the defendant's motion to dismiss that, "[b]ecause HUD had allowed [the plaintiff] to make payments at dates later than the note stated for over a decade, she believed she could pay HUD the amount it claimed she owed to be current in her loan at a different time."

After the plaintiff's admitted failure to perform her obligations under the terms of the settlement agreement, the defendants in the Hutchinson County District Court suit filed a counterclaim against the plaintiff for breach of contract. On March 25, 1997, the Hutchinson County District Court ruled in favor of the defendants' counterclaim, dismissing the plaintiff's original claim and awarding possession of the Borger Property to HUD. The plaintiff appealed this decision to the Court of Appeals for the Seventh District of Texas at Amarillo, which affirmed the state trial court on November 30, 1998.

Thereafter, the plaintiff filed a complaint in the Court of Federal Claims. Although the plaintiff has missed numerous deadlines, repeatedly failed to effect service on the defendant, and frequently tried to change her posture on issues in a series of often hard-to-follow filings, this court, nonetheless, has endeavored to accommodate the plaintiff because of an alleged spell of protracted and unusually bad luck. To cite only a few examples: Approximately one month after the defendant filed its motion to dismiss, the plaintiff moved for an enlargement of time in which to file a response, stating that she had "been ill from food poisoning during two different weeks in March" and had "not worked on a full-time basis due to her illness . . . ." The court granted the plaintiff's motion. Soon after, however, the plaintiff again moved for an enlargement of time in which to respond to the motion to dismiss. The plaintiff's second motion stated:

> [Plaintiff] has experienced food poisoning twice and injured her right arm in an accident a few weeks ago. She has had to retain a typist to type the response for her. The copy machine relied on by the typist simply quit working late Thursday, April 15, 1999. There is not a shop in Borger, Texas to repair the typist's machine . . . .

In response to the plaintiff's second motion, the court noted that Ms. Newby had failed to serve the motion on the defendant and ordered her to do so within one week. The court also directed the clerk's office "to include another copy of the Rules of this court when transmitting this order to the plaintiff in order to insure that plaintiff is familiar with the rules of this court." Subsequently, the plaintiff moved for an enlargement of time in which to file a supplemental petition, stating that she had "experienced a score of personal tragedies in the last few months that have included the death of her younger brother from kidney cancer, the death of her only brother-in-law, and the death of her fiancé." On the same day, the plaintiff filed a separate motion for an enlargement of time in which to file a status report, claiming that car trouble and a third bout of food poisoning had prevented her from making a timely filing. The court granted the plaintiff's motions for enlargement, but admonished the plaintiff "to pay closer attention to the schedule established in the court's orders, and to allow time for contingencies, in order to be able to complete and file submissions on time." Notwithstanding the court's admonition, the plaintiff again moved for an enlargement of time to respond to an order of this court, claiming that one of the court's earlier

orders had been "inadvertently mislaid." The court granted the plaintiff's motion in part, after which the plaintiff again moved for an enlargement of time in which to respond to the "mislaid" order, claiming that financial trouble, "recurrent nosebleeds," postal restrictions enacted after the terrorist attacks of September 11, and the Veteran's Day holiday had prevented the plaintiff from making a timely filing. The court once again granted the plaintiff's motion.

In an effort finally to move the case toward resolution and to consolidate the plaintiff's many disparate filings, the court held a status conference with the parties appearing by telephone. At the conference, the parties' requested an opportunity to file supplemental briefs on the defendant's motion to dismiss or, in the alternative, for summary judgment. The court granted the parties' request for limited further briefing. Subsequently, the defendant withdrew its motion for summary judgment. Remaining before the court is the defendant's motion to dismiss for lack of jurisdiction over the subject matter.

## DISCUSSION

Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte*, even on appeal. *Fanning, Phillips, Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (1993)); *United States v. Newport News Shipbuilding & Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998); *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1324 (Fed.Cir.1997); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991); *Bowen v. United States*, 49 Fed.Cl. 673, 675 (2001) (noting that the plaintiff bears the burden of proof on a motion to dismiss for lack of jurisdiction), *aff'd*, 292 F.3d 1383 (Fed.Cir. 2002); *Schweiger Const. Co. v. United States*, 49 Fed.Cl. 188, 205 (2001); *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404

(1994). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Thomas v. United States*, 56 Fed.Cl. 112, 115 (2003); *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001), *aff'd in part*, 281 F.3d 1376 (Fed. Cir.), *reh'g denied* (2002); *Bowen v. United States*, 49 Fed.Cl. at 675; *Vanalco, Inc. v. United States*, 48 Fed.Cl. 68, 73 (2000); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed. Cir.1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Brubaker Amusement Co., Inc. v. United States*, 304 F.3d 1349, 1355 (Fed.Cir.2002), *cert. denied sub nom. Penn Triple S. v. United States*, —— U.S. ——, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003); *Leider v. United States*, 301 F.3d 1290, 1295 (Fed.Cir.2002), *reh'g and reh'g en banc denied* (2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003); *Conti v. United States*, 291 F.3d 1334, 1338 (Fed.Cir.2002), *cert. denied*, 537 U.S. 1112, 123 S.Ct. 904, 154 L.Ed.2d 785 (2003); *Consolidated Edison Co. v. O'Leary*, 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied sub nom. Consolidated Edison Co. v. Pena*, 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States*, 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (1997); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied*, 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir.1989); *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed. Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.'"); *RCS Enters., Inc. v. United States*, 46 Fed.Cl. 509, 513 (2000).

Pursuant to Rule 8(a)(1) of the Rules of the Court of Federal Claims (RCFC) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir.1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding a motion to dismiss based on lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the nonmovant's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. 99; *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed.Cir.2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States*, 119 F.3d at 1580), *cert. denied*, 535 U.S. 1096, 122 S.Ct. 2293, 152 L.Ed.2d 1051 (2002); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d at 1167 (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991)); *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States*, 873 F.2d at 1416; *Ho v. United States*, 49 Fed.Cl. 96, 100 (2001), *aff'd*, 30

Fed.Appx. 964 (Fed.Cir.2002); *Alaska v. United States*, 32 Fed.Cl. at 695. If a defendant or the court challenges jurisdiction, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. at 189; *see also Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. at 404–05. When considering a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to resolve any factual disputes. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *see also Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed.Cir.1993) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."), *cert. denied*, 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994); *Vanalco v. United States*, 48 Fed.Cl. at 73 ("If the truth of the alleged jurisdictional facts is challenged in a motion to dismiss, the court may consider relevant evidence to resolve the factual dispute.").

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491 (2000). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdic-

tion over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir. 1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr,* 533 U.S. 289, 299 n. 10, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001); *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, "'it does not create any substantive right enforceable against the United States for money damages.'" *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States,* 249 F.3d 1364, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001), *aff'd,* 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1373 (Fed.Cir.2000); *cert. denied,* 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555–56 (Fed.Cir.1997), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en

banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" *White Mountain Apache Tribe v. United States,* 249 F.3d at 1372 (quoting *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948; *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998), *reh'g denied* (1999)); *Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir. 1996), *reh'g denied and en banc suggestion declined* (1997); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

In the present case, the plaintiff asserts causes of action which the plaintiff styles "breach of contract claims, breach of fiduciary claims, and contract modification issues." The plaintiff asserts in the complaint that "[t]he Secretary of Housing and Urban Development breached its contract with plaintiff (the promissory note assigned to HUD from Gulf Coast Investments Corporation and assigned to plaintiff from Mildred Newby) by changing its terms to 30 years rather than 20 years." The plaintiff further alleges that "[t]he Secretary of Housing and Urban Dee-Development [sic] breached its contract as modified by the subsequent conduct of the parties by not allowing plaintiff to pay the amount in arrears, plus fees and be reistatreinstated [sic] with HUD." The complaint includes a third count: "The secretary of HUD is estopped from demanding that the contracts between it and plaintiff be strictly construed because of the relationship of trust and confidence the government developed

with plaintiff over a course of a dozen or more years."[6] To remedy the alleged wrongs raised by the plaintiff in her complaint, the plaintiff asks "to be reinstated as owner of 2601[sic] Coble Borger, Texas."

The defendant has moved to dismiss the plaintiff's complaint for lack of subject matter jurisdiction. The defendant presents two distinct arguments in support of dismissal. First, the defendant argues that this court lacks jurisdiction over the plaintiff's claims for breach of contract, because the complaint seeks only declaratory and injunctive relief, rather than money damages. The defendant also argues that this court lacks jurisdiction over the plaintiff's breach of fiduciary duty claim, because claims for breach of fiduciary duty sound in tort and, therefore, fall outside this court's jurisdiction.

■ The defendant is correct that this court does not have jurisdiction to grant the type of declaratory and injunctive relief that the plaintiff seeks and does not have the broad equitable powers of the district courts. Generally, to invoke the jurisdiction of this court, "[t]he claim must be one for money damages against the United States." *United States v. Mitchell*, 463 U.S. at 216, 103 S.Ct. 2961; *see also National Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed.Cir.1998) ("[A] plaintiff seeking to invoke the [Court of Federal Claims'] jurisdiction must present a claim for 'actual presently due money damages from the United States.'") (quoting *United States v. King*, 395 U.S. at 3, 89 S.Ct. 1501). The equitable jurisdiction of the United States Court of Federal Claims is tightly circumscribed and may be exercised only in connection with a claim for money damages. As the United States Court of Appeals for the Federal Circuit has observed:

Although the Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, *see* 28 U.S.C. §§ 1491(a)(2), (b)(2), there is no provision giving the Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court.

*National Air Traffic Controllers Ass'n v. United States*, 160 F.3d at 716; *see also Bobula v. United States Dep't of Justice*, 970 F.2d 854, 859 (1992) ("While limited equitable relief is sometimes available in Tucker Act [28 U.S.C. § 1491] suits, the equitable relief must be incidental to and collateral to a claim for money damages."). The plaintiff, however, has failed to make a claim for money damages pursuant to which the court may exercise its ancillary equitable powers. The sole relief the plaintiff seeks in her complaint is "to be reinstated as owner of 2601[sic] Coble Borger, Texas."[7] Because the plaintiff's prayer is for equitable relief beyond this court's jurisdiction under the Tucker Act, the plaintiff's claims must be dismissed. Thus, even though an entry on a HUD form, titled "Statement of Account," issued following the plaintiff's final payment default, indicates a thirty year term as opposed to a twenty year term on the promissory note, the court cannot review the plaintiff's allegation of breach of contract, given that the plaintiff asserts no claim for money damages. Finally, while the plaintiff's allegation of subsequent conduct as legally modifying the contract between the parties remains non-specific and unsupported, absent a claim for money damages, the court is similarly unable to review these allegations.

■ The defendant also argues that the court lacks jurisdiction over any alleged breach by the defendant of a fiduciary duty or supposed relationship of trust and confidence that the plaintiff alleges had developed between HUD and the plaintiff. Although

---

**6.** Because the court dismisses the plaintiff's complaint for lack of subject matter jurisdiction, the court need not reach the plaintiff's estoppel argument.

**7.** The plaintiff, in her response to the defendant's motion to dismiss, claims that "[s]tates in the jurisdictional section of her complaint that the damages to her are in approximately [sic]

$100,000." This statement by the plaintiff is inaccurate. The plaintiff does not allege money damages anywhere in her complaint or "Supplemental Petition." The court also declines to construe the plaintiff's boilerplate prayer for "all other relief to which [the plaintiff] may be justly entitled" as a claim for money damages.

unclear, this latter allegation appears to be a basis for the plaintiff's allegation of the existence of a fiduciary relationship between the plaintiff and HUD, as well as the basis for plaintiff's estoppel argument, mentioned above. The defendant contends that claims for breach of fiduciary duty sound in tort and, therefore, fall outside the court's jurisdiction.

It is well established that the Court of Federal Claims lacks jurisdiction over cases sounding in tort. The modern Tucker Act limits the Court of Federal Claims' jurisdiction to "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(2) (2000). Courts which have inquired into the scope of the Tucker Act's jurisdictional grant have concluded that section 1491 does not grant jurisdiction over tort claims to the Court of Federal Claims. *See New America Shipbuilders v. United States,* 871 F.2d 1077, 1079 (Fed.Cir.1989) ("If the government misconduct alleged was tortious, jurisdiction is not granted the Claims Court under the Tucker Act ...."); *Tree Farm Dev. Corp. v. United States,* 218 Ct.Cl. 308, 316, 585 F.2d 493, 498 (1978) (noting that the Court of Claims "specifically lacks jurisdiction in cases sounding in tort" under the Tucker Act); *Cottrell v. United States,* 42 Fed.Cl. 144, 148 (1998) ("The Tucker Act limits the court's jurisdiction to non-tort money suits against the United States ...."); *see also Keene Corp. v. United States,* 508 U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) ("[T]ort actions brought in other courts were beyond the jurisdiction of the Court of Claims, just as tort cases are outside the jurisdiction of the Court of Federal Claims today."); *Brown v. United States* 105 F.3d 621, 623 (Fed.Cir.1997) ("The Court of Federal Claims ... lacks jurisdiction over tort actions against the United States."); *LeBlanc v. United States,* 50 F.3d 1025, 1030 (Fed.Cir.1995) (noting that claims against the government for illegal interference with a lawsuit are "tort claims, over which the Court of Federal Claims has no jurisdic-

tion"); *Shearin v. United States,* 992 F.2d 1195, 1197 (Fed.Cir.1993) ("It is well settled that the United States Court of Federal Claims lacks-and its predecessor the United States Claims Court lacked-jurisdiction to entertain tort claims."). The Supreme Court recognized as early as 1868 that Congress did not intend to confer on the Court of Claims jurisdiction over tort actions against the government: "The language of the statutes which confer jurisdiction upon the Court of Claims, excludes by the strongest implication demands against the government founded on torts." *Gibbons v. United States,* 8 Wall. 269, 75 U.S. 269, 275, 19 L.Ed. 453 (1868). Finally, "[j]urisdiction to hear tort claims is exclusively granted to the United States District Courts under the Federal Tort Claims Act." *McCauley v. United States,* 38 Fed.Cl. 250, 264 (1997), *aff'd,* 152 F.3d 948 (Fed.Cir.1998); *see also* 28 U.S.C. § 1346(b) (2000); *Wood v. United States,* 961 F.2d 195, 197 (Fed.Cir.1992) ("[D]istrict courts have ... exclusive jurisdiction over tort claims for any amount if they fall within the Federal Tort Claims Act, [28 U.S.C.] § 1346(b)."); *Martinez v. United States,* 26 Cl.Ct. 1471, 1476 (1992) ("The district courts have exclusive jurisdiction in [Federal Tort Claims Act] actions."), *aff'd,* 11 F.3d 1069 (Fed.Cir.1993).

Although it is often difficult to discern the precise nature of the plaintiff's claims, it is clear that if the plaintiff has brought a tort claim before this court, such a claim must be dismissed. The defendant argues in its motion to dismiss that "Ms. Newby's allegation of a 'breach of fiduciary duty' is a claim sounding in tort and should be dismissed upon jurisdictional grounds." Whether an action sounds in tort, however, is determined not by the nomenclature chosen by the parties, but by the character of the underlying dispute. *See Brazos Elec. Power Co-op., Inc. v. United States,* 144 F.3d 784, 787 (Fed.Cir. 1998) ("[W]e customarily look to the substance of the pleadings rather than their form."); *National Ctr. for Mfg. Sciences v. United States,* 114 F.3d 196, 199 (Fed.Cir. 1997) ("Notwithstanding the imprecision of the complaint, we therefore 'look to the true nature of the action in determining the exis-

tence or not of jurisdiction.' ") (quoting *Katz v. Cisneros,* 16 F.3d 1204, 1207 (Fed.Cir. 1994)).

After review of the plaintiff's numerous submissions to the court, the causes of action described by the plaintiff as a breach of fiduciary duty and a violation of the parties' supposed relationship of trust and confidence appear to the court to allege tortious behavior by government officials. Breach of fiduciary duty is generally classified as a tort. *See, e.g., Regents of University of New Mexico v. Knight,* 321 F.3d 1111, 1116 (Fed.Cir. 2003) (classifying breach of fiduciary duty as a tort); *Hoover Group, Inc. v. Custom Metalcraft, Inc.,* 84 F.3d 1408, 1411 (Fed.Cir. 1996) (same). As a claim for review of tortious conduct, the plaintiff's allegations are beyond the scope of this court's jurisdiction.

The plaintiff seeks solely injunctive relief, which this court cannot grant. To withstand a motion to dismiss, a complaint "must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d at 1465. The plaintiff has failed to state a claim for money damages, a necessary jurisdictional element of claims brought before this court. Nor does this court have the jurisdiction to review claims sounding in tort.

## CONCLUSION

For the reasons discussed above, the court **GRANTS** the defendant's motion to dismiss the complaint. The clerk's office shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**